## STATE *vs.* GEORGE S. BREWER

1. RAPE—MOTHER OF PROSECUTRIX COULD TESTIFY THAT PROSECUTRIX COMPLAINED OF BEING KIDNAPPED, BUT COULD NOT REPEAT PROSECUTRIX'S TESTIMONY.

   In prosecution for assault with intent to commit rape, where, after prosecutrix had testified, her mother was asked what the minor prosecutrix had said about the matters to which she had testified on the afternoon of the alleged offense, and upon defendant's objection, the state claimed the testimony would be competent to show that a complaint by prosecutrix was made after the occurence, and in order to corroborate the probability of the prosecuting witness' story *held* the answer "that she said she was kidnapped," and that that was all, except as prosecutrix had testified, was admissible; but the witness could not repeat prosecutrix's testimony.

2. CRIMINAL LAW—IN PROSECUTION FOR ASSAULT WITH INTENT TO COMMIT RAPE, EVIDENCE OF DEFENDANT'S ACCOSTING ANOTHER HELD INADMISSIBLE TO SHOW INTENT.

   In a prosecution for assault with intent to commit rape upon a minor girl, testimony of another girl under 16 years of age as to defendant's approaching her on the street prior to the bringing of this charge *held* not sufficiently similar to the charge in the indictment to allow proof of those circumstances for the purpose of showing intent, either under the general rule or the exception.

3. WITNESSES—CHILD WHO DOES NOT UNDERSTAND THE NATURE OF AN OATH MAY NOT BE ALLOWED TO TESTIFY WITHOUT OATH.

   In a prosecution for attempt to rape, where an 8 year old girl showed by her answers that she did not comprehend the meaning of an oath she could not be permitted to testify without administering the oath, permitting the jury to take her statements for what they were worth.

4. RAPE—IN PROSECUTION FOR ASSAULT TO RAPE, EVIDENCE HELD TO PREVENT A BINDING INSTRUCTION FOR DEFENDANT.

   In a prosecution for assault to rape, where the defendant asked for binding instructions, on the ground that the state had failed to prove an assault, *held* that in view of the evidence the motion should be denied.

5. CRIMINAL LAW—WHERE JUROR TESTIFIED TO HAVING BEEN TALKED TO ABOUT CASE DURING RECESS, PROPER TO WITHDRAW A JUROR AND DECLARE A MISTRIAL.

In a prosecution for assault with intent to commit rape upon a minor girl, where the defense was an alibi, and evidence was introduced to show defendant's good reputation for morality and decency, and a juror testified that during a recess another party had, against his will, talked to him about the case, and said he would not believe some of the state's witnesses *held*, that it was proper to withdraw a juror and declare a mistrial.

6. CONTEMPT—ONE TELLING JUROR THAT HE COULD NOT BELIEVE STATE'S WITNESSES HELD GUILTY OF CONTEMPT.

Where one, although apparently without a malevolent intention, talked to a juror during recess in criminal trial, stating that he could not believe some of the state's witnesses, he should be punished for contempt.

7. ASSAULT AND BATTERY—"ASSAULT" DEFINED.

An "Assault" is an unlawful attempt by force and violence to do injury to the person of another, the person making the attempt having the present ability to commit the injury; and any unlawful touching of the person of another is sufficient to commit an assault.

8. ASSAULT AND BATTERY—FALSE IMPRISONMENT—UNLAWFUL IMPRISONMENT BY DETENTION OF PERSON.

Any detention of a person of another, whether in private house or upon public streets, constitutes an unlawful imprisonment, and is also an assault.

9. ASSAULT AND BATTERY—LAYING OF HANDS UPON CHILD OF TENDER YEARS WITHOUT AUTHORITY CONSTITUTES AN ASSAULT.

Any laying of hands upon child of tender years by one without authority or control over such child is unlawful, and constitutes an assault.

10. RAPE—IN A PROSECUTION FOR ASSAULT WITH INTENT TO COMMIT RAPE IT WAS PROPER TO INSTRUCT ON THE CRIME OF ASSAULT ONLY.

In a prosecution under an indictment for assault with intent to commit rape, found under *Rev. Code* 1915, § 4707, facts *held* to require the jury to be instructed that, if they believed from the testimony beyond a reasonable doubt that the defendant committed the assault with intent to commit rape, he was guilty of such assault, but that if he committed the assault without intent to commit rape he should be guilty of assault only.

(*January* 7, 1921)

CONRAD and HEISEL, J. J., sitting.

*Sylvester D. Townsend, Jr.,* Atty.-Gen., *Aaron Finger* and *Clarence A. Southerland,* Deputy Attys.-Gen., for State.

*William W. Knowles* for accused.

Court of General Sessions for New Castle County, January Term, 1921.

INDICTMENT No. 23, January Term, 1921.

George S. Brewer was indicted for assault with intent to commit rape. At the trial, after the evidence was in, a mistrial was declared, and the case continued until the next term. Contempt proceedings followed. On second trial, verdict—guilty of assault.

Evidence was introduced by the state to show that one C., the prosecuting witness, 8 years old, while waiting at the corner of Fourth and West streets in the city of Wilmington at 2 o'clock in the afternoon of December 10, 1920, for a street car to take her to her home from school, was approached by the accused, who asked her if she would take a prescription to the drug store for him, to which she replied that she would; that the accused thereupon took her by the hand, and took her to an apartment house, about four squares away; that, upon reaching the apartments, they proceeded to the top floor, where the accused tried to open a door leading to the roof, but, finding the door locked, took the girl to the basement of the building; that when they reached the basement, the accused picked up a rag bag and said it contained a doll, but, saying he was unable to find the doll, he offered to give the girl five cents, which she refused to take, that she thereupon began to cry, when a man entered the basement, whom she told that she was lost, and who let her out of the building; that she then boarded the car and went to her home, where she reported the matter to her parents.

Tenants in the apartment house testified to seeing the accused, with the child in his company, in the building at the time alleged.

The mother of the prosecuting witness, after testifying that the girl was later than usual in reaching home from school on the afternoon that the offense was alleged to have been committed, was asked:

"What, if anything, did she state to you then with regard to the matter about which she has testified?"

Mr. Knowles objected, on the ground that the prosecuting witness having testified, it was presumed that she had told all her story, and that an answer to the present question would be in the nature of self-serving testimony. The state contended, in

reply, that it is always competent to establish that a complaint had been made immediately following the occurence, in order to corroborate the probability of the story of the prosecuting witness. Objection overruled.

"A. Well, when she came in, she said she was kidnapped. Q. Then, what else, if anything, did she say? A. That was all she complained, only she told me the whole story the same as Anna told you, as soon as she came in the house."

Mr. Knowles objected, and moved that the last answer be stricken out, as it was self-serving testimony.

HEISEL, J. [1] Mr. Southerland, we think that you can prove by this witness what you have proved by her—that the little girl complained after she came home of having been taken away with some one, and stated to her practically what she stated on the witness stand. We think that you cannot repeat that. We will admit the answer that is in.

L., a girl 16 years of age, called on behalf of the state, testified that one evening, about 8 or 9 months prior to the bringing of this charge, the accused approached her on the street, at the same time pulling his hat down and his collar up, and taking something white from his pocket. Mr. Knowles objected to the admission of testimony of this witness, as it is introduced as a similar offense, and antedates and is not in any way connected with the charge in this case, and, therefore, unless the state shows that it was a special scheme, plan or design connecting it with this particular case, this testimony is not admissible. *Effler v. State*, 4 *Boyce*, 62, 85 *Atl.* 731.

Mr. Southerland: We offer this testimony under the exception to the general rule providing that similar acts constituting distinct offenses are not admissible. When the intent with which the accused did a certain act becomes material to the case at issue, it seems to me that it is necessary to show with what intent he took this little girl to this particular apartment. This evidence is offered for the purpose of showing intent. By this witness' testimony we intend to prove an act of indecent nature. If the accused had been in the habit of accosting young girls on the street for an

improper purpose, that would be admissible as showing intent. 4 *Chamb. Mod. Law of Ev. p.* 4463.

Mr. Finger: A sufficient answer to the authority cited by counsel for the accused is that it has no application to this case, or to cases of this sort. The defendant in that case was charged with obtaining money under false pretences. We are not trying to prove by this witness, or by the witnesses who will testify similarly, that Mr. Brewer committed this act. All we intend to prove is the intent with which he committed the act, if he did commit it. The jury may infer what his intent was. We are only trying to prove one element of the offense charged, namely, the question of intent, from facts and circumstances, and that is the only way in which the intent that is in a man's mind can be proven. *State v. Johnson,* 133 *Iowa,* 40, 110 *N. W.* 170; *Grabowski v. State,* 126 *Wis.* 447, 105 *N. W.* 806, 807; *Williams v. State,* 8 *Humph.* (*Tenn.*) 593.

HEISEL, J. [2] The court feel, in regard to the witness now on the stand, that the facts proposed to be proved by her, for the purpose of showing intent, are not sufficiently similar to the charge in the indictment as to allow proof of those circumstances, either under the general rule, or the exception.

T., a girl 8 years of age, called by the state, upon showing by her answers to questions asked her by the court that she did not comprehend the meaning of an oath, was objected to by Mr. Knowles, as not having qualified to testify.

Mr. Finger: Where a child is too young to appreciate the nature and meaning of an oath, and too young to have an oath administered, it seems to me that the rule is—and I always understood it be to a uniform rule—to admit the testimony of that child, without administering the oath, for what it is worth to the jury. *Chamb. Mod. Law of Ev.* 271.

HEISEL, J. [3] We feel that we should not adopt that rule, certainly not without more consideration than we are able to give at this time.

When the state rested, counsel for the accused moved the court for binding instructions on the ground that the state had

failed to prove an assault. *State v. Donovan*, 5 *Boyce*, 48, 90 *Atl.* 220.

In reply, it was contended that the mere laying of hands on another person is unlawful and constitutes an assault, and that the state having shown that the accused took the prosecuting witness by the hand when going to the apartment house, an assault had been proven; and that the intent with which the accused took the child to said apartment is solely a question of fact for the jury to decide.

HEISEL, J. [4]  Gentlemen, after a careful consideration of the evidence, we are of the opinion the motion for binding instructions should be denied, and the whole case submitted to the jury for their determination upon the evidence.

The defense was an alibi. Evidence was also introduced to show a good reputation for the accused for morality and decency. The state then introduced evidence to show that the reputation of the accused for morality and decency was bad.

When about to adjourn the jury was instructed by the court that if any person other than a member of the jury should talk to any one of them about the case, or should talk about the case in their presence for the purpose of their hearing what was said, it would be their duty to report the matter to the court. Subsequently, when the court reconvened, one of the jurors, John S. Hamilton, informed the court that he had been approached since the adjournment by Walter Sillitoe, as follows:

"He asked me what disposition had been made of the case. I said, 'We were discharged until Monday morning.'    'Now,' I said, 'don't talk to me about this.'  I was afraid he would say something; and he said, 'No, but I wouldn't believe what those cops said.'    He said, 'I wouldn't believe the evidence of those cops;' and I left him, and I said, 'I will have to report you,' or words to that effect."

After receiving this information, the court in chambers examined, under oath, all the other jurors impaneled in the case to ascertain whether or not any of them had been approached, to which inquiry each answered in the negative.

Thereupon, after the return of the court to the courtroom:

Statement.

Mr. Townsend: If the court please, in the case pending before the court, it appears that one of the jurors has been approached, has been talked to, concerning this case. Counsel for the defendant has nothing whatever to do with it; but we believe that a mistrial should be declared, that a juror should be withdrawn, and the case should be continued until the next term of court, and we make that application.

Counsel for the accused offered no objection to this application. The court declared a mistrial, discharged the jury impaneled, and continued the case to the next term.

In dismissing the jury, HEISEL, J., said:

[5] The court want to commend in the highest way the juror who was approached and spoken to about the evidence since the last adjournment, and who performed his duty by reporting to the court. Jury trials must be kept free from all improper influences, and the only way to do it is to proceed in the manner in which the court is now proceeding. Mr. Foreman, will you please step from the jury box. The remaining members of the jury are discharged from further consideration of this case.

Subsequently, the Attorney-General filed an information in which, omitting the formal parts, it was charged:

"Sylvester D. Townsend, Jr., AttorneyGeneral for the state of Delaware, now here in the Court of General Sessions of the state of Delaware, now sitting in and for the county aforesaid, at the January term of said court, in the year of our Lord one thousand nine hundred and twenty-one, information makes:

"That Walter Sillitoe, late of Wilmington hundred, in the county aforesaid, on the eighth day of January, in the year of our Lord one thousand nine hundred and twenty-one, with force and arms, at Wilmington, the hundred aforesaid, in the county aforesaid, did then and there commit an act of contempt of this court in that the said Walter Sillitoe, on the day and year aforesaid, did approach a certain John S. Hamilton, the said John S. Hamilton then and there being a member of a jury duly impaneled in this court and duly sworn to hear, try, and determine a certain case then and there pending, such case having not yet been determined, in this court, to wit, the case of *State v. George Brewer*, the said George Brewer then and there being on trial before the jury of which the said John S. Hamilton was a member as aforesaid, on an indictment found by the grand jury of New Castle county, charging the said George Brewer with the offense of assault with intent to commit rape, and the said Walter Sillitoe did then and there urge the said John S. Hamilton not to believe the testimony of certain witnesses who had testified for the state in said case, in contempt of this honorable court, and against the peace and dignity of the state.  *  *  *"

The issuance of a rule for Walter Sillitoe was waived, and he appeared in open court with David J. Reinhardt, Esq., his attorney. The testimony of the informing juror against Sillitoe was read to him, and he then testified as follows:

"I was going down that morning. I work the market every Saturday and in going down I come across him. I believe it was below Sixth street some place, I believe in back of the new theater. I started up to him, and I asked him, 'What did they do with Brewer?' He said, 'Nothing'; and I got the impression that he said that they had acquitted him, and I said, 'I am surprised. I thought they had good evidence up to the police officers,' and he said, 'What you said to me'—I wouldn't say it wouldn't change his opinion or change his ideas —and I said, 'I hope not;' and I haven't spoken to him since."

The accused also offered evidence to show his previous good reputation for honesty and fair dealing.

At the conclusion of the hearing:

HEISEL, J. (to the accused). [6] The court have very carefully considered what you have said, and have very carefully considered what the juror has said. We see no reason in the world why he should come here and say what is not true. On the other hand, we find no connection between your talking with this juror and the defendant, Brewer. If we did, the punishment would be a very great deal more severe than that which we are going to impose.

Before imposing sentence, we want to say this: It is reprehensible on the part of anybody to approach any juror while he is on duty in the court. A juror has a right to come here and hear cases, and determine them without being talked to, before, during or after trial about such cases. Now, for that reason and as a punishment to you, and as a warning to others, we feel that this case cannot be passed over lightly. It has caused a mistrial. Such conduct may send an innocent man to jail, and thus deprive him of his liberty. It is a thrust at the very heart of justice to have jurors approached outside of the courtroom at any time during their service as jurors at court, for the purpose of discussing with them cases they may be called upon to try, or are then trying.

We feel, after a careful consideration, that we should hold

you guilty of contempt of court for approaching this juror and that you be sentenced to pay a fine of $50 and the costs of this proceeding; and, in lieu of the payment of such fine, you be imprisoned for a term of 30 days, beginning on this day, and ending on the 25th day of February, next. And you are committed to the custody of the trustees of the New Castle county workhouse until this sentence is carried into execution.

If we thought there was a malevolent intention back of your conduct in this matter, we would not hesitate to send you to jail for a considerable length of time. You may sit down.

At the following March term, 1921, (BOYCE, J., sitting) George S. Brewer was brought to the bar of the court, and was tried before a jury on the indictment found against him at the preceding January term.

BOYCE, J., after the close of the evidence, and arguments of counsel, charged the jury in part:

The indictment in this case charges that George S. Brewer of Wilmington hundred, in this county, on the 18th day of December, in the year of our Lord 1920, feloniously and with violence did assault Anna Converse (a child of about 9 years of age) with intent her, Anna Converse, violently and against her will feloniously to ravish and carnally know, and then and there and thereby to commit rape and felony, against the act of Assembly.

The indictment was found under *Rev. Code* 1915, § 4707, which provides that if any person "shall, with violence, assault any female with intent to commit a rape," such person "shall be deemed guilty of felony," etc.

[7] An assault has frequently been defined as an unlawful attempt by force and violence to do injury to the person of another, the person making the attempt having the present ability to commit injury.

Any unlawful touching of the person of another is sufficient to constitute an assault. 5 *C. J.* 726; 2 *R. C. L.* 526.

[8] Any detention of the person of another, whether in a private house or upon the public street, constitutes an unlawful imprisonment and is also an assault. *Rus. on Crimes*, 753.

[9]   Any laying of the hands upon a child of tender years by one without authority or control over such child is unlawful, and constitutes an assault. *Whart. Crim. Ev.* 2, 1667.

[10]   If you believe from the testimony beyond a reasonable doubt that the prisoner not only committed an assault as alleged in the indictment, but that he did so with intent to commit rape, you should find him guilty in manner and form as he stands indicted. *State v. Honey*, 2 *Boyce*, 326, 80 *Atl.* 240; *State v. Smith*, 9 *Houst.* 588, 33 *Atl.* 441.

If you are not satisfied that the prisoner committed the assault with intent to commit rape but nevertheless believe beyond a reasonable doubt that he did commit an assault upon the prosecuting witness, your verdict should be not guilty in manner and form as he stands indicted, but guilty of an assault only. *State v. Honey, supra.*

Verdict—guilty of assault.