**People of State of Illinois, Defendant in Error, v. Edgar Dudgeon, Plaintiff in Error.**

**Gen. No. 10,412.**

Heard in this court at the May term, 1950. Opinion filed October 7, 1950. Released for publication October 25, 1950.

EDGAR J. ELLIOTT, for plaintiff in error.

LEE E. DANIELS, State's Attorney for DuPage County, of Wheaton, for defendant in error; ROBERT J. SCOTT, Assistant State's Attorney, of Glen Ellyn, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

Upon a trial in the circuit court of DuPage county by the court, a jury having been waived, the defendant Edgar Dudgeon was found guilty of an assault while masked and sentenced to the Illinois State Penitentiary for an indeterminate period as provided by law,

the court fixing the minimum duration of his imprisonment at one year and the maximum duration of his imprisonment at five years. To reverse this judgment defendant prosecutes this writ of error.

The evidence discloses that on the evening of February 14, 1949, Mary L. Hummer, nineteen years of age and residing with her father in Downers Grove, attended a picture show in Downers Grove. With other girl friends, she left the show about fifteen minutes past eleven o'clock and walked with them to the corner of Warren and Main streets, where her friends left her, and she continued walking along Main street and turned into Franklin street. It was drizzling rain, and the walks were icy and quite slippery. When she turned the corner into Franklin street off of Main street, the defendant stepped from behind a tree and came toward her. His face was covered with a mask. As soon as she observed him, she stopped, screamed and asked what he was doing there. According to her testimony he did not reply to her query but jumped at her, knocking her down, and with one hand he took her glasses from her and placed his other hand over her mouth and told her not to say anything. He then picked her up and, retaining a hold upon her, told her to walk across the street to his car.

The defendant testified that at the time of the trial he was twenty years old; that he and Mary L. Hummer had attended the Downers Grove high school and both had graduated therefrom in the class of 1948; that they did not move in the same social circles, were not friends, and he had no acquaintanceship with her and had never been in her company but that he did know her by sight; that upon the evening in question he was driving his car along Main street in Downers Grove about 11:15 p. m.; that he observed Mary L. Hummer as she was walking north on Main street and he drove his car around the corner at the intersection of Franklin street and Main street and parked

535

it at the northwest corner of the intersection; that he put on a mask covering his face from his eyes down and got out of the car, walked across the street and stood behind a tree and was there when Mary L. Hummer came around the corner; that as she approached she saw him, appeared to be very startled and said: "My God, you scared me"; that he moved toward her and she moved backward and slipped, and he "lunged" forward in order to catch her and did catch her as her knees were hitting the ground and helped her to her feet. He then told her to go across the street and get in his car, and he assisted her by holding her arm in crossing the street and helped her to get into his car. He then got in and drove three miles to the Butterfield golf course and after entering it drove one-half mile and then stopped his car.

After they entered his car and drove away from the corner of Franklin and Main streets nothing was said until he stopped the car in the golf course, and then she said, "Well," and he said: "You know that I am going to rape you, don't you?" The defendant then started to unbutton her coat but had some difficulty in doing so. He then told her to take off her clothing. She attempted to comply but couldn't get her slip off, and he took hold of it and ripped it off of her. After the removal of all her clothes, the defendant told her to get into the back seat of the car and pushed her as she reached for some of her clothing. On the back seat of the car they had sexual intercourse, and thereafter he inquired whether she was cold and, being told that she was, he handed her clothing to her and she put them on and both then returned to the front seat of the car and he started the motor. After they had traveled about two hundred feet, one side of the car went off a bridge into a small stream, and he was unable to move it and they left the car, walked to the home of the brother of the defendant, two and one-half miles distant, and defendant borrowed the

car of his brother and drove the prosecuting witness to the home of her father, arriving there around two o'clock in the morning. Upon her arrival, she awakened her father and told him what had happened. Just before they arrived at the home of defendant's brother, the defendant asked Miss Hummer if she had ever heard of a fellow named Dudgeon. She said she had but could not place him. Defendant then, for the first time, removed his mask and she put on her glasses and she recognized him. Until that time, however, she testified that she thought it was someone else. The following day the defendant was arrested, and on February 19, 1949, he made a statement to the state's attorney and sheriff substantially the same as the testimony he gave upon the trial.

For reversal of this judgment counsel for plaintiff in error argue that the evidence shows that upon the night in question, the plaintiff in error had a definite plan in mind and that plan was to pick up Mary L. Hummer in his car and have intercourse with her; that in order to be able to pick her up he had to be masked; that he did put on a mask, did pick her up in his car and did have intercourse with her. "The ultimate act," counsel say, "was intercourse. Everything occurring prior thereto was for the purpose of the ultimate act. The ultimate act was consented to and the complaining witness in consenting to the ultimate act of necessity consented to each and every act that led up to such ultimate act." In support of this contention counsel cite *State v. Archer,* 22 S. D. 137, 115 N. W. 1075 and *State v. Pickett,* 11 Nev. 255, 21 Am. Rep. 754.

In *State v. Archer,* 22 S. D. 137, 115 N. W. 1075, the information charged that the defendant made an assault upon the person of Bertha Ligenfelter with intent to have unlawful sexual intercourse with her, he being a single man she being a married person of the opposite sex and not being then and there the wife

537

of the defendant. In holding that the facts stated in the information did not constitute a public offense, the court quoted from *People v. Bransby,* 32 N. Y. 525, as follows, *viz:*—''A criminal conviction for an assault cannot be sustained where no battery has been committed and none attempted, intended or threatened by the party accused. It is indispensable to the offense that violence to the person be offered, menaced or designed. There is no exception to this rule in the case of an indignity offered to a female, where she is a consenting party to an act involving her own dishonor.'' The court also quoted from *Smith v. State,* 12 Ohio St. 466, 80 Am. Dec. 355, where it is said: ''An assault implies force upon one side, and repulsion, or at least want of consent, upon the other. An assault, therefore upon a consenting party, would seem to be a legal absurdity.'' The court also cited 2 Bish. Crim. Law 35: ''One violating a woman's chastity, thereby committing an act immoral and in some States indictable, does not assault her, if what he does is with her consent.''

In *State v. Pickett,* 11 Nev. 255, 21 Am. Rep. 754, the defendant was indicted for the crime of rape and convicted of an assault with intent to commit rape upon a girl under twelve years of age. In reversing the judgment of the trial court and remanding the cause for a new trial, the court sustained the contention of the defendant that an attempt to commit rape can never constitute an assault when the female actually consents to what was done irrespective of her age. The court held that there could be no assault upon a consenting female, although there may be what the statute designates a rape, and in the course of its opinion said: ''The common law definition of rape is 'the carnal knowledge of a woman forcibly and against her will' (4 Black. Com. 210). The same definition is adopted by our statute. (Comp. Laws, Sec. 2350.) Under this definition an assault is a necessary ingre-

dient of every rape, or attempted rape. But it is not a necessary ingredient of the crime of carnally knowing a child under the age of twelve years, with or without her consent, which is defined in the later part of the section, and which is called 'rape.' It is obvious that here are two crimes differing essentially in their nature, though called by the same name. To one force and resistance are essential ingredients, while to the other they are not essential; they may be present or absent without affecting the criminality of the fact of carnal knowledge. As an assault implies force and resistance, the crime last defined may be committed, or at least attempted, without an assault if there is actual consent on the part of the female.''

 In the instant case, plaintiff in error was found guilty of an assault and battery while masked. What the *Archer* and *Pickett* cases held was that an assault cannot be committed upon anyone who consents to be assaulted. In our opinion, so far as the offense charged in this indictment, that is, assault and battery while masked, is concerned, it need not be determined whether the prosecuting witness did or did not consent to have sexual intercourse with the defendant. Of course, as said by the author of the article on Assault and Battery in 6 C. J. S., § 90, p. 941, the consent of the one assaulted to the act complained of is a good defense and it is true that there can be no assault on account of liberties taken with the person of a woman to which she has fully and freely consented, but that is not the case here.

 An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. Assault and battery is the unlawful beating of another. (Ill. Rev. Stat., ch. 38, pars. 55, 56 [Jones Ill. Stats. Ann. 37.031, 37.032].) Sec. 57a of the same chapter provides: ''Whoever, being hooded, robed or masked so as to conceal his identity is guilty of an assault or an assault and

539

battery, shall be fined not less than $100.00 nor more than $1000.00 or imprisoned in the penitentiary not less than one year nor more than five years or both.''

The evidence in this case shows that on the night in question the defendant was behind a tree close to the sidewalk upon which the prosecuting witness was lawfully traveling. He was masked so as to conceal his identity. He came from behind the tree and jumped toward the prosecuting witness thereby startling and frightening her; that when he jumped at her, he either knocked her down or she slipped and fell to her knees; that he took her glasses in one hand and put the other hand over her mouth and told her not to say anything; that he then took hold of her, picked her up and told her to walk to the car across the street; that when they reached the car, he opened the door and ordered her to get in and she obeyed; that after a considerable lapse of time during which he drove some three miles, plaintiff in error stopped his car and told the prosecuting witness to take her clothes off and laid his hands on her coat and started to unbutton it; that he had some difficulty in doing so and almost tore one of the buttons off; that he then grabbed her slip and ripped it and pushed her when she, in obedience to his demand, left the front seat of the car and got into the rear seat. There is nothing in this record to lead to the conclusion that any of these acts were done by the defendant with the consent of the prosecuting witness.

In 9 C. J. S. 917, 918, it is said that an assault usually implies force by the assailer and resistance by the assailed; that the force or violence attempted or offered must be physical and that mere words, however insulting or abusive, will not constitute an assault nor will mere words of solicitation or persuasion. Any unlawful touching of the person of another is sufficient to constitute an assault; and assault may consist of using gestures toward another under such

circumstances as to give him reasonable grounds to believe that defendant intends to apply actual force to his person such as aiming and shooting in the direction of another. An assault may also be committed by taking indecent liberties with a female, compelling a person, male or female, to strip, restraining a person from exercising a lawful right without personal injury, compelling a person to change his course or stopping and preventing a person, by means of threats, from passing along a public highway. In *State v. Brewer*, a Delaware case reported in 1 W. W. Harr. 363, 114 Atl. 604, it was said that any detention of the person of another, whether in a private house or on the public streets, constitutes an unlawful imprisonment and is also an assault.

MR. JUSTICE GRAY, speaking for the Supreme Court of the United States, in *Union Pac. R. Co. v. Botsford,* 141 U. S. 250, 35 L. Ed. 734, said (p. 252): "The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow. To compel anyone, and especially a woman, to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass." This language was used in a civil and not a criminal case but, as stated by the New York Court of Appeals in *Lyon v. Manhattan R. Co.,* 142 N. Y. 298, 25 L. R. A. 402, 406, speaking through MR. JUSTICE O'BRIEN, these words express the general sentiment of mankind.

██ In our opinion the legal principles announced in the cases cited and relied upon by counsel for plaintiff in error are not applicable to the facts disclosed by this record. According to all the authorities, the admitted conduct of plaintiff in error toward the prosecuting witness in this case upon the occasion in question constituted an assault and battery while masked as charged in the indictment. His actions were abnormal and inexplicable. His purpose was evil and

sinister. If, as his counsel argue, he had a definite plan in mind on this February evening and that plan was to do what this record shows he did, then his plan was an illegal and unlawful one as well as an evil one and one which merits the condemnation of every believer in decency and upright living.

Counsel for plaintiff in error call our attention to the fact that their client is a young man twenty years of age and insist that this was not a serious offense and did not warrant the imposition of such a severe sentence. Counsel say that if plaintiff in error was guilty of any offense it would be that of "pushing the complaining witness down while masked."

 In *People v. Smith,* 245 Ill. App. 119, the court cited *People v. Elliott,* 272 Ill. 592, and held that if a statute is not in violation of the Constitution, then any punishment assessed by a court or jury within the limits fixed thereby cannot be adjudged excessive, for the reason that the power to declare what punishment may be assessed against those convicted of crime is not a judicial power but a legislative one, and on page 123 of the opinion, the court says: "So far as we are advised, our Supreme Court has never reduced nor has it directed a trial court to reduce a sentence already within the limits of the statute in order that it might conform to the views of that court as to what punishment should have been inflicted. In the absence of such a decision, we do not feel warranted in interfering with the discretion conferred by the statute upon the trial court."

The judgment of the trial court is sustained by the law and the evidence and that judgment must be affirmed.

*Judgment affirmed.*