## STATE OF CONNECTICUT *v.* FLOYD TROUPE
### (14882)

Peters, C. J., and Callahan, Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued January 17—officially released June 11, 1996

*Bradford S. Babbitt,* special public defender, with whom were *Andrew H. Pinkowski,* special public defender, and, on the brief, *Linda L. Morkan,* special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, *Cecelia B. Wiederhold,* assistant state's attorney, and *Nancy L. Gillespie,* deputy assistant state's attorney, for the appellee (state).

*Jon L. Schoenhorn* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Mario T. Gaboury* filed a brief for the Center for the Study of Crime Victims' Rights, Remedies and Resources, University of New Haven et al., as amici curiae.

PALMER, J. A jury convicted the defendant, Floyd Troupe, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A), and kidnapping in the first degree in

violation of General Statutes § 53a-92 (a) (2) (A).[1] On appeal[2] from the judgment of the trial court sentencing him to a total effective sentence of fifteen years imprisonment,[3] the defendant claims that: (1) the admission of evidence under the common law constancy of accusation doctrine violated his rights under the confrontation clause of the sixth amendment to the United States constitution; (2) even if we conclude that the constancy of accusation doctrine is not unconstitutional, we should abandon, or at least modify, the rule;[4] (3) the

[1] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

General Statutes § 53a-72a provides in relevant part: "(a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ."

General Statutes § 53a-92 provides in relevant part: "(a) A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[2] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony . . . for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[3] The defendant was sentenced to concurrent prison terms of fifteen years for sexual assault in the first degree, fifteen years for kidnapping in the first degree, and five years for sexual assault in the third degree.

[4] After oral argument in this case on October 27, 1995, we ordered, sua sponte, that the parties file supplemental briefs limited to the following questions:

"I. Assuming that the admission of constancy of accusation testimony does not violate either the federal or the state constitution, should this court reconsider the rule of evidence permitting the admission of such testimony?

"II. If the answer to question I. is 'yes,' should this court:

"A. continue the rule of evidence in its present form;

"B. eliminate the rule, and hold instead that such testimony is inadmissible unless it is independently admissible under some other rule of evidence;

"C. modify the rule by allowing the victim on direct examination, prior

trial court improperly denied his motion to exclude the testimony of an expert witness for the state on the ground that the witness had violated the terms of the court's sequestration order; (4) his fair trial rights were violated by the state's late amendment of the charging information and by its late disclosure of a laboratory report; and (5) § 53a-92 (a) (2) (A) is unconstitutionally vague as applied to this case. Although we today announce a modification of the constancy of accusation doctrine, we nevertheless affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On a Sunday morning in May or June, 1992, the victim, a thirty year old female, left her West Haven residence to take a walk on the beach promenade several blocks from her home. On her way to the promenade, the defendant, whom the victim did not know, approached her and inquired whether he could walk with her. She agreed, and they walked and talked

to any cross-examination, to state only the fact that the victim told others of the incident, without allowing testimony of the details of that conversation, and allowing those others to relate only that the victim told them of the incident, without allowing testimony of the details of that conversation; or

"D. modify the rule by allowing such testimony under some other limitations?

"III. If in this case this court eliminates or modifies the rule, what temporal effect should our holding have? That is, should the new holding apply:

"A. retrospectively, that is, to all cases, including this case, that have not yet been finally adjudicated on appeal;

"B. prospectively in part, that is, only to cases in which any constancy of accusation testimony is admitted at trial on a date subsequent to the date of publication of the opinion of this court in this case, but including, nonetheless, this case on appeal;

"C. strictly prospectively, that is, only to cases in which any constancy of accusation testimony is admitted at trial on a date subsequent to the date of publication of the opinion of this court in this case; or

"D. under some other form of prospective adjudication?"

We granted the defendant's motion for supplemental argument limited to the issues set forth above. Supplemental argument was held on January 17, 1996.

together for approximately forty-five minutes to an hour. After stopping briefly to purchase a soft drink at a restaurant, the defendant and the victim exchanged telephone numbers. When the defendant asked the victim if he could see her that night, she declined his request. The defendant then departed, and the victim returned home.

Over the next few months, a series of telephone calls ensued between the victim and the defendant, resulting mostly in an exchange of messages on their respective telephone answering machines. On one occasion when the defendant spoke with the victim on the telephone, he asked her for a date. She again declined the defendant's invitation.

Some time in early to mid-August, the victim returned home from vacation to find a message from the defendant on her answering machine. They were unable to speak to one another until the evening of August 18, at which time the victim mentioned to the defendant that she was going shopping. The defendant asked to accompany her, and the victim agreed. The victim also agreed to pick up the defendant at his residence. Upon the victim's arrival at the defendant's apartment building, the defendant came down to her car, told her that he was not ready to leave, and suggested that she come up to his apartment while he finished dressing. The victim agreed and accompanied the defendant to his third floor apartment. The defendant offered the victim a drink, which she refused, and then he proceeded to drink a beer and smoke a marijuana cigarette.

The victim became concerned that the defendant was not interested in shopping with her and informed him that she was leaving. The defendant walked over to the couch where the victim was seated and told her that he did not want her to leave. After telling her how pretty she was, the defendant kneeled down in front of her

and, against her wishes, placed his hands under her blouse. Despite her protests and efforts to push him away, the defendant proceeded to fondle and kiss her breasts. The victim finally managed to pull away from the defendant, but as she tried to leave, he grabbed her, pulled her down onto a nearby mattress, and fell on top of her. The victim, who continued to resist as the defendant attempted to remove her clothing, eventually freed herself and again tried to leave. The defendant caught her, however, and pushed her back down onto the mattress. The defendant then forcibly removed the victim's overalls and underpants and forced her to engage in sexual intercourse with him.

After sexually assaulting the victim, the defendant prevented her from leaving the apartment until he had finished dressing. When the defendant finally allowed the victim to leave, he followed her to her car and insisted that he wanted to see her again. The defendant eventually backed away from the victim's car and she drove off, proceeding directly to the nearby home of a friend, David McCall, whom she told about the incident. Several days later, the victim called the New Haven Rape Crisis Center and told counselor Beverly DeLoatch about the assault. A few weeks thereafter, the victim told another friend, Judy Dixon, about the incident. In early September, the victim gave a recorded statement concerning the sexual assault to Detective Mary Fish of the New Haven police department. On the basis of the victim's statement to Fish, the defendant was arrested and charged with sexual assault and kidnapping.

At trial, the victim testified about the sexual assault and identified each of the four individuals whom she had told about the incident. The state thereafter elicited the testimony of those four persons.[5] The testimony of

[5] McCall testified immediately after the victim testified. He stated that the victim had arrived at his home on the evening of August 18, 1992, appearing

each of them was admitted as constancy of accusation evidence.[6] Additional facts will be set forth as they become relevant.

## I

The defendant first claims that the admission into evidence of constancy of accusation testimony[7] violated

scared and upset, and told him that she had just been raped. In a subsequent conversation with McCall, the victim pointed out the apartment in which the sexual assault took place, which could be seen from McCall's residence. The victim, however, did not reveal the defendant's identity to McCall.

Dixon, a close friend of the victim, testified that sometime in August, 1992, the victim, who had been acting "very strange, very quiet, very closed," revealed to Dixon that she had been sexually assaulted. The victim told Dixon that the perpetrator's name was Floyd, that she had met him while she was taking a walk, and that he had raped her when she stopped by his apartment to pick him up to go shopping.

DeLoatch, a counselor and assistant director of the New Haven Rape Crisis Center, testified that the victim contacted her by telephone in August, 1992. She informed DeLoatch that she had been sexually assaulted several days earlier. The victim, who told DeLoatch the defendant's last name, also explained that she had been acquainted with the defendant for a few months and that she had met him while taking a walk. DeLoatch met with the victim on the following Monday, at which time the victim described the incident in greater detail.

Finally, Fish testified that the victim first reported the incident to her over the telephone in early September, 1992, identifying her assailant by name. The next day, Fish met with the victim, who gave a detailed, tape-recorded statement describing the sexual assault. Both the tape and a transcript of the interview were admitted into evidence under the constancy of accusation doctrine.

[6] Following McCall's testimony, the trial court properly instructed the jury that his testimony was admissible solely to assist the jury in assessing the victim's credibility and not as substantive proof of the alleged sexual assault. In its final instructions to the jury, the trial court again explained the limited purpose for which the constancy of accusation testimony had been admitted into evidence.

[7] "In sex-related crime cases, we have long recognized that a witness, to whom a victim has complained of the offense, could testify not only to the fact that a complaint was made but also to its details. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Dabkowski*, 199 Conn. 193, 199, 506 A.2d 118 (1986). Under this doctrine, such testimony is permitted, once the victim has testified about both the incident and the identity of the witness to whom the victim has reported the incident, solely "to corroborate the victim's prior in-court testimony concerning the facts of the

his rights under the confrontation clause of the sixth amendment to the federal constitution.[8] The defendant acknowledges that we have recently concluded that constancy of accusation evidence does not run afoul of the federal confrontation clause. See *State* v. *Kelley*, 229 Conn. 557, 643 A.2d 854 (1994). He claims, however, that we should reconsider our determination in light of United States Supreme Court precedent holding that an out-of-court statement not falling within a firmly rooted hearsay exception is presumptively unreliable, and therefore inadmissible for confrontation clause purposes, unless the hearsay statement exhibits particular-

alleged sexual offense and to show constancy in the victim's declarations." (Internal quotation marks omitted.) *State* v. *Rodgers*, 207 Conn. 646, 649, 542 A.2d 1136 (1988). "In approving the admission of constancy of accusation testimony, we have explained that it would be natural for the victim of actual or attempted sexual assault to relate the incident to others if it had actually happened, but not if the incident had not occurred. Similarly, the victim's recitation of the details of the incident would likely be constant if the claim were true, but discrepancies would be more likely to appear if the incident had not occurred." *State* v. *Kelley*, 229 Conn. 557, 565–66, 643 A.2d 854 (1994).

Although we have characterized the constancy of accusation doctrine as an exception to the hearsay rule; see, e.g., *State* v. *Rodgers*, supra, 207 Conn. 649; *State* v. *Pollitt*, 205 Conn. 61, 76, 530 A.2d 155 (1987); *State* v. *Dabkowski*, supra, 199 Conn. 197; *State* v. *Ouellette*, 190 Conn. 84, 92, 459 A.2d 1005 (1983); *State* v. *Hamer*, 188 Conn. 562, 565, 452 A.2d 313 (1982); *State* v. *Gelinas*, 160 Conn. 366, 367, 279 A.2d 552 (1971); *State* v. *Purvis*, 157 Conn. 198, 207, 251 A.2d 178 (1968), cert. denied, 395 U.S. 928, 89 S. Ct. 1788, 23 L. Ed. 2d 246 (1969); we have also noted that " '[c]onstancy evidence is properly viewed as a peculiar species of evidence [not readily conformed] . . . to evidentiary rules designed for other classes of evidence . . . .' " *State* v. *Kelley*, supra, 229 Conn. 566, quoting *State* v. *Parris*, 219 Conn. 283, 292, 592 A.2d 943 (1991); see also *State* v. *Bethea*, 24 Conn. App. 13, 19, 585 A.2d 1235, cert. denied, 218 Conn. 901, 588 A.2d 1076 (1991) (constancy of accusation doctrine is "hybrid rule of law"). Because constancy of accusation testimony is admissible only to assist the jury in evaluating the credibility of the alleged victim and not to prove the truth of the facts recited, the doctrine, strictly speaking, is not a hearsay exception. See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.22.1, p. 410.

[8] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

ized guarantees of trustworthiness. See, e.g., *Idaho* v. *Wright*, 497 U.S. 805, 818, 821–22, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990). Specifically, the defendant argues that because the constancy of accusation doctrine is not a well established hearsay exception[9] and because evidence introduced under the doctrine carries no special indicia of reliability,[10] constancy of accusation testimony violates the sixth amendment. We disagree.

The defendant's argument ignores a fundamental tenet of confrontation clause jurisprudence, namely, that the clause "is not violated by admitting a declarant's out-of-court statements, *as long as the declarant is testifying as a witness and subject to full and effective cross-examination.*" (Emphasis added.) *California* v. *Green*, 399 U.S. 149, 158, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970). It is true, as the defendant claims, that since *Green*, the United States Supreme Court has clarified the contours of the confrontation clause insofar as it relates to the admission of out-of-court statements when the declarant does *not* testify. See, e.g., *White* v. *Illinois*, 502 U.S. 346, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992) (spontaneous declaration and medical examination exceptions to hearsay rule do not require declarant either to testify or to be found unavailable); *United States* v. *Inadi*, 475 U.S. 387, 106 S. Ct. 1121, 89 L. Ed. 2d 390 (1986) (moving party need not prove unavailability of declarant if statement sought to be admitted falls

---

[9] Although the defendant acknowledges that we have permitted the use of constancy of accusation evidence in sexual assault cases for nearly 170 years; see part II of this opinion; he claims that the doctrine's "roots . . . run shallow" because, he asserts, "[t]he vast majority of constancy cases have been reported within recent memory; only a handful arose earlier."

[10] In support of his claim that constancy of accusation testimony is not especially likely to be trustworthy, the defendant challenges the assumption underlying the doctrine that "it would be natural for the victim of actual or attempted sexual assault to relate the incident to others if it had actually happened, but not if the incident had not occurred." *State* v. *Kelley*, supra, 229 Conn. 565.

within coconspirator hearsay exception); *Ohio* v. *Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980) (hearsay exception for prior testimony does not violate sixth amendment if declarant either testifies or is unavailable; in latter case, testimony admissible only upon showing that it bears adequate indicia of reliability). In none of these cases, however, has the court retreated from its holding in *Green* that the sixth amendment is not violated if the declarant testifies in court and is subject to cross-examination.[11] Because constancy of accusation evidence is not admissible unless the victim has testified, and is subject to cross-examination, concerning the crime and the identity of the person or persons to whom the victim has reported the crime; see, e.g., *State* v. *DePastino*, 228 Conn. 552, 566, 638 A.2d 578 (1994); *State* v. *Brice*, 186 Conn. 449, 453–55, 442 A.2d 906 (1982); we reject the defendant's contention that the constancy of accusation doctrine violates the sixth amendment.

## II

The defendant also claims that we should abandon, or at least severely limit, the constancy of accusation

[11] We note that all of the United State Supreme Court cases cited by the defendant have involved out-of-court statements admitted into evidence as proof of the matter asserted. Testimony is admissible under the constancy of accusation doctrine, however, not as substantive evidence but, rather, to corroborate the victim's testimony. See footnote 7. The United States Supreme Court has never expressly considered the question of whether an out-of-court statement that is not introduced for substantive purposes is nevertheless subject to the same confrontation clause analysis as is an out-of-court statement introduced solely for purposes of impeachment or corroboration, although it has intimated that the same analysis may appertain. See *California* v. *Green*, supra, 399 U.S. 164 (stating that *Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 [1968], suggests that "there is little difference as far as the Constitution is concerned between permitting prior inconsistent statements to be used only for impeachment purposes, and permitting them to be used for substantive purposes as well"). We need not reach this issue, however, in light of our conclusion that constancy of accusation evidence survives constitutional scrutiny under *Green* because it is admissible only if the complainant and the person or

doctrine. Although we decline to abandon the doctrine entirely, we conclude, in light of modern day considerations, that it should be restricted.

We begin our analysis of this issue with a review of the evolution of our constancy of accusation doctrine, which traces its roots to the "fresh complaint" rule. The fresh complaint doctrine "evolved as a response to the common-law requirement of 'hue and cry.' Victims of violent crimes were expected to cry out immediately and alert their neighbors that they had been violently assaulted. The neighbors could then initiate a collective search for the aggressor. The 'hue and cry' also served to dispel any suspicion that the victim had been somehow involved or complicit in the crime. . . . Trial courts required full details of the victim's complaint as a necessary element of the prosecution's case in those instances of violence. . . .

"The courts applied the same 'hue and cry' requirement in rape cases . . . . Because 'hue and cry' was a necessary prerequisite for a court to hear a rape case, [women who had not complained] could not have their cases prosecuted. Later, courts heard cases in which women had not raised the hue and cry after having been raped. In those cases, however, the courts allowed the evidence of the woman's silence to be introduced as a self-contradiction to her later claim of rape. . . .

"Gradually, the 'hue and cry' rule proved largely ineffective because it did not assure the capture of the perpetrator and because even someone complicit in a crime could raise a cry of complaint. Other methods, such as the offering of monetary rewards and criminal immunity for information leading to the apprehension of the perpetrator, proved more useful in apprehending and prosecuting violent offenders. 1 L. Radzinowicz, A

persons to whom the complainant has reported the alleged crime testify in court and are subject to cross-examination.

History of English Criminal Law 27 (1956)." (Citations omitted.) *State* v. *Hill*, 121 N.J. 150, 157–58, 578 A.2d 370 (1990).[12]

"The courts continued, however, to assume in these cases that any 'normal' woman would report a rape soon after its occurrence. The clear implication of this assumption was that if the woman did not complain, it was likely that no rape had occurred. See [D.] DuBois, 'A Matter of Time: Evidence of a Victim's Prompt Complaint in New York,' 53 Brooklyn L. Rev. 1087 (1988). Therefore, these courts allowed evidence of the woman's silence to be introduced as a self-contradiction to her later claim of rape. [*State* v.] *Hill*, [supra, 121 N.J. 159]; *Cole* [v. *State*, 83 Md. App. 279, 290–91, 574 A.2d 326, cert. denied, 321 Md. 68, 580 A.2d 1077 (1990)]. These assumptions about how a 'normal' woman should react to a sexual assault, coupled with the common-law rule requiring corroboration of the victim's testimony in order to obtain a rape conviction, reflect the common law's profound distrust of female complainants in rape cases. See S. Estrich, 'Rape,' 95 Yale L.J. 1087 (1986)." *State* v. *Kendricks*, 891 S.W.2d 597, 601 (Tenn. 1994). "This continued adherence to the hue and cry in rape cases willfully ignored both its ineffectiveness in every other context, and the possibility that women would keep silent about rape because more than any other violent crime it could shed shame and embarrassment on the victim. Courts in effect believed that '[i]t was entirely natural, after becoming the victim of an assault against her will, that [a woman] should have spoken out. That she did not, that she went about as if nothing had happened, was in effect an assertion that nothing

---

[12] "Because it proved ineffective as a means of facilitating the capture of perpetrators, the literal 'hue and cry' requirement obsolesced, so that women who did not immediately complain were no longer categorically prohibited from prosecuting their cases. 1 L. Radzinowicz, [supra, p. 27]." *State* v. *Kendricks*, 891 S.W.2d 597, 601 (Tenn. 1994).

violent had been done.' [4 J. Wigmore, Evidence (4th Ed. 1972) § 1135, p. 298]." *State* v. *Hill*, supra, 158–59.

"In the early 1800s courts began to examine more closely the principles underlying the rules of evidence. . . . Courts developed the hearsay rule, barring witnesses from repeating statements made out-of-court by other people. . . . Partly because of that development, the 'hue and cry' rule in rape cases was replaced by the fresh-complaint rule. The fresh-complaint rule excluded the details of the complaint and did not allow testimony in order to prove the underlying issue of whether the woman had been raped. The narrow purpose of the rule was to negate any inference that because the victim had failed to tell anyone that she had been raped, her later assertion of rape could not be believed." (Citations omitted.) Id., 159.

"Because juries were allowed—sometimes even instructed—to draw negative inferences from the woman's failure to complain after an assault, see, e.g., *State* v. *Thomas*, 351 Mo. 804, [818, 174 S.W.2d 337] (1943), the doctrine of 'fresh complaint' evolved as a means of counterbalancing these negative inferences. Used in this way, the 'fresh complaint' doctrine allowed the prosecutor to introduce, during the case-in-chief, evidence that the victim had complained soon after the rape. Its use thereby forestalled the inference that the victim's silence was inconsistent with her present formal complaint of rape. 4 J. Wigmore, [supra, § 1135]. In other words, evidence admitted under this doctrine effectively served as 'anticipatory rebuttal,' in that the doctrine often permitted the prosecutor to bolster the credibility of the victim before her credibility had first been attacked. Id. The 'fresh complaint' doctrine thus constituted a rare exception to the common-law rule that prohibited rehabilitative evidence in the absence of an attack on the witness's credibility. Id.; see also

[id.,] § 1124; 1 McCormick on Evidence, § 47 (4th ed. 1992)." *State* v. *Kendricks*, supra, 891 S.W.2d 601.

This court expressly adopted the fresh complaint doctrine in *State* v. *De Wolf*, 8 Conn. 93, 100 (1830), in which we stated that "on an indictment for rape . . . such evidence is received to shew *constancy* in the declarations of the witness. If a female testifies, that such an outrage has been committed on her person, an enquiry is, at once, suggested, why it was not communicated to her female friends." (Emphasis in original.) Forty-six years later, in *State* v. *Kinney*, 44 Conn. 153 (1876), we expanded the rule to permit the state to introduce testimony concerning the details of the complaint. We explained our reason for doing so as follows: "Why has the rule been adopted that in prosecutions for rape . . . the public prosecutor may show that the woman on whom the assault was made complained of it to her friends? It is simply because such a course would be natural if the crime had been committed, but very unnatural if it had not been. But her natural impulses would prompt her to tell all the details of the transaction. Why, on the same principle, ought not her statement of the details to be evidence? If her story were untrue, the greater would be the opportunity for detection, and the accused would be helped in his defense. If her story were true, the evidence would show constancy in the charge even to the details, and the truth would the more clearly appear." Id., 156–57. This extension of the fresh complaint rule became known as the constancy of accusation doctrine.

In accordance with the rationale of *Kinney*, our current rule allows the state to introduce the fact of the complaint and the details of the complaint once the victim has testified regarding the alleged sexual assault and the identity of the person or persons to whom a complaint had been made. Subject to a determination by the trial court that the proffered evidence is more

probative than prejudicial, the state may introduce the constancy of accusation testimony of each of the persons to whom the complainant had reported the sexual assault. See, e.g., *State* v. *Kish*, 186 Conn. 757, 769, 443 A.2d 1274 (1982) (constancy testimony by neighbor, doctor and police officers); *State* v. *Brigandi*, 186 Conn. 521, 525, 442 A.2d 927 (1982) (constancy testimony by police officers, mother-in-law and social worker); *State* v. *Greene*, 161 Conn. 291, 294, 287 A.2d 386 (1971) (constancy testimony by grandmother, friend, mother, teacher and police officer); *State* v. *Zoravali*, 34 Conn. App. 428, 440, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994) (constancy testimony by police officers, three social workers and nurse). Finally, the complaint need not have been made promptly after the commission of the alleged offense; any delay in reporting is to be considered by the fact finder in evaluating the weight of the constancy of accusation testimony. See *State* v. *Parris*, 219 Conn. 283, 291, 592 A.2d 943 (1991) (" '[w]hatever delay took place between the time of the attack and the time the victim first told witnesses of it does not affect the admissibility of the evidence, but merely presents a question of fact for the trier as to the weight to be given it' "); *State* v. *Brigandi*, supra, 529 (same). Since *Kinney*, we have consistently rejected attempts either to eliminate or to modify the doctrine. See, e.g., *State* v. *Kish*, supra, 768 (rejecting claim that constancy of accusation doctrine was no longer viable); *State* v. *Dabkowski*, 199 Conn. 193, 199–203, 506 A.2d 118 (1986) (legislature's elimination of corroboration as requirement for sex offenses does not require change in constancy of accusation doctrine); *State* v. *Parris*, supra, 292 (refusing to adopt dictum from earlier case that would have required complaint to be made within " 'natural' " time); *State* v. *Kelley*, supra, 229 Conn. 564 (declining review of unpreserved claim that constancy doctrine is "outmoded and clearly anachronistic").

Today, every state but California[13] permits the prosecution to introduce evidence of a rape victim's complaint in its case-in-chief. The vast majority of jurisdictions, however, limits such evidence to testimony concerning the fact of the complaint; the details of the complaint are not admissible.[14] Connecticut is one

---

[13] In *People* v. *Brown*, 8 Cal. 4th 746, 883 P.2d 949, 35 Cal. Rptr. 2d 407 (1994), the California Supreme Court abolished the fresh complaint rule entirely. California, however, does not uniformly prohibit testimony concerning a rape victim's complaint; instead, such evidence is admissible if it will "assist the jury in arriving at a more reliable determination as to whether the offense occurred." Id., 760. California applies this rule to other types of offenses, in addition to sexual assaults. See, e.g., *People* v. *Blalock*, 238 Cal. App. 2d 209, 217, 47 Cal. Rptr. 604 (1965) (fact that robbery victim had told others he had been robbed admissible in case in which robbery victim had initially told police he had lost wallet but later reported that he had been robbed after seeing defendant in newspaper as suspect in another robbery); see also 4 J. Wigmore, supra, § 1142.

[14] Forty-four states and the District of Columbia currently allow the state to introduce evidence of a sexual assault victim's complaint. See *Aaron* v. *State*, 273 Ala. 337, 139 So. 2d 309 (1961), cert. denied, 371 U.S. 846, 83 S. Ct. 81, 9 L. Ed. 2d 82 (1962); *Greenway* v. *State*, 626 P.2d 1060 (Alaska 1980); *State* v. *Navarro*, 90 Ariz. 185, 367 P.2d 227 (1961); *Gabbard* v. *State*, 225 Ark. 775, 285 S.W.2d 515 (1956); *People* v. *Montague*, 181 Colo. 143, 508 P.2d 388 (1973); *State* v. *Brewer*, 31 Del. 363, 114 A. 604 (1921); *Battle* v. *United States*, 630 A.2d 211 (D.C. App. 1993); *Lyles* v. *State*, 412 So. 2d 458 (Fla. App. 1982); *Epps* v. *State*, 216 Ga. 606, 118 S.E.2d 574, cert. denied, 368 U.S. 849, 82 S. Ct. 81, 7 L. Ed. 2d 47 (1961); *State* v. *Hall*, 88 Idaho 117, 397 P.2d 261 (1964); *People* v. *Lawler*, 142 Ill. 2d 548, 568 N.E.2d 895 (1991); *Woods* v. *State*, 233 Ind. 320, 119 N.E.2d 558 (1954); *State* v. *Ladehoff*, 255 Iowa 659, 122 N.W.2d 829 (1963); *State* v. *Hoskinson*, 78 Kan. 183, 96 P. 138 (1908); *Cook* v. *Commonwealth*, 351 S.W.2d 187 (Ky. 1961); *State* v. *Robertson*, 89 La. Ann. 618 (1886); *State* v. *Calor*, 585 A.2d 1385 (Me. 1991); *State* v. *Werner*, 302 Md. 550, 489 A.2d 1119 (1985); *People* v. *Taylor*, 66 Mich. App. 456, 239 N.W.2d 627 (1976); *Carr* v. *State*, 208 So. 2d 886 (Miss. 1968); *State* v. *Van Doren*, 657 S.W.2d 708 (Mo. App. 1983); *State* v. *Peres*, 27 Mont. 358, 71 P. 162 (1903); *State* v. *Daniels*, 222 Neb. 850, 388 N.W.2d 446 (1986); *State* v. *Campbell*, 20 Nev. 122, 17 P. 620 (1888); *State* v. *Lynch*, 94 N.H. 52, 45 A.2d 885 (1946); *State* v. *Hill*, supra, 121 N.J. 150; *State* v. *Baca*, 56 N.M. 236, 242 P.2d 1002 (1952); *People* v. *McDaniel*, 81 N.Y.2d 10, 611 N.E.2d 265, 595 N.Y.S.2d 364 (1993); *State* v. *Freeman*, 100 N.C. 429, 5 S.E. 921 (1888); *State* v. *Gebhard*, 73 N.D. 206, 13 N.W.2d 290 (1944); *Roberts* v. *State*, 87 Okla. Crim. 93, 194 P.2d 219 (1948); *State* v. *Campbell*, 299 Or. 633, 705 P.2d 694 (1985); *Commonwealth* v. *Green*, 487 Pa. 322, 409 A.2d 371 (1979); *State* v. *Russo*, 49 R.I. 305, 142 A. 543 (1928); *Simpkins* v. *State*,

of only five states[15] that continues to permit testimony regarding the details of a sexual assault victim's complaint even if such testimony is not otherwise admissible either as a prior consistent statement introduced to rebut a claim of recent fabrication or under the excited utterance hearsay exception.

Several jurisdictions have recently reconsidered the continued vitality of the fresh complaint doctrine. See, e.g., *People* v. *Brown*, 8 Cal. 4th 746, 883 P.2d 949, 35 Cal. Rptr. 2d 407 (1994); *Battle* v. *United States*, 630 A.2d 211 (D.C. 1993); *State* v. *Hill*, supra, 121 N.J. 150. The highest court of each of these jurisdictions has concluded that the assumptions that originally gave rise to the doctrine are no longer tenable.[16] "Indisputably, one of the historic premises of the doctrine—that it is natural for the victim of a sexual assault to complain promptly following the assault—has been discredited substantially in contemporary times. The overwhelming body of current empirical studies, data, and other infor-

303 S.C. 364, 401 S.E.2d 142 (1991); *State* v. *Twyford*, 85 S.D. 522, 186 N.W.2d 545 (1971); *State* v. *Kendricks*, supra, 891 S.W.2d 597; *Vera* v. *State*, 709 S.W.2d 681 (Tex. Crim. App. 1986); *State* v. *Martinez*, 7 Utah 2d 387, 326 P.2d 102 (1958); *State* v. *Willett*, 78 Vt. 157, 62 A. 48 (1905); *Pepoon* v. *Commonwealth*, 192 Va. 804, 66 S.E.2d 854 (1951); *State* v. *Ferguson*, 100 Wash. 2d 131, 667 P.2d 68 (1983); *State* v. *Golden*, 175 W. Va. 551, 336 S.E.2d 198 (1985); *Hannon* v. *State*, 70 Wis. 448, 36 N.W. 1 (1888); *Elliott* v. *State*, 600 P.2d 1044 (Wyo. 1979).

[15] See *Territory* v. *Schilling*, 17 Haw. 249 (1906), overruled in part on other grounds, *Territory* v. *Nishi*, 24 Haw. 677 (1919), and *Territory* v. *Silva*, 27 Haw. 270 (1923); *Commonwealth* v. *Licata*, 412 Mass. 654, 591 N.E.2d 672 (1992); *State* v. *Blohm*, 281 N.W.2d 651 (Minn. 1979); *Johnson* v. *State*, 17 Ohio 593 (1848).

[16] Massachusetts, which adheres to the constancy of accusation doctrine, also recently reevaluated its rule. *Commonwealth* v. *Licata*, 412 Mass. 654, 591 N.E.2d 672 (1992). While expressing extreme discomfort with the assumptions that underlie the rule; see also *Commonwealth* v. *Lavalley*, 410 Mass. 641, 646, 574 N.E.2d 1000 (1991); the Supreme Judicial Court of Massachusetts "continue[d] to perceive a need for the [constancy of accusation] doctrine. We cannot ignore the societal tendency to disbelieve sexual assault victims and to presume that a rape victim will make a prompt complaint." *Commonwealth* v. *Licata*, supra, 658.

mation establishes that it is *not* inherently 'natural' for the victim to confide in someone or to disclose, immediately following commission of the offense, that he or she was sexually assaulted." (Emphasis in original.) *People* v. *Brown,* supra, 758; see *State* v. *Kendricks,* supra, 891 S.W.2d 604 (rule has "its genesis in . . . profoundly sexist expectation"); *Commonwealth* v. *Licata,* 412 Mass. 654, 658, 591 N.E.2d 672 (1992) (doctrine has "its origins in outmoded, and invalid, sexual myths"); *State* v. *Hill,* supra, 164 (rule founded on "sexist notions of how a woman should act after she has been raped"). At the same time, these courts have also recognized that many people still adhere to the belief that a rape victim ordinarily will report the crime and that the failure of the victim to do so casts doubt on the credibility of the accusation. Consequently, most of the jurisdictions that have had occasion to consider the continued efficacy of the doctrine have decided to retain it in recognition of the unfortunate fact that the prejudices underlying the doctrine remain all too prevalent in our society. "[O]ur judicial process cannot remove from every juror all subtle biases or illogical views of the world. The fresh-complaint rule responds to those jurors on their own terms." *State* v. *Hill,* supra, 164; *People* v. *McDaniel,* 81 N.Y.2d 10, 17, 611 N.E.2d 265, 595 N.Y.S.2d 364 (1993); see *State* v. *Kendricks,* supra, 604 ("until the 'presumption' that the victim's testimony is a fabrication disappears, we must retain the doctrine of 'fresh complaint' ").

Although we agree that the assumptions underlying the constancy of accusation doctrine are unfounded, we are also cognizant of the fact that those misconceptions are not uncommon. We are particularly in accord with the view expressed by the Supreme Court of New Jersey in its attempt to balance the various interests involved: "Society's perception and understanding of rape is changing. Yet, no one contends that subtle and

overt bias against women victims of rape has been eradicated. Hence, we hesitate to discard the benefit of this rule to a woman who does complain without a clearer understanding of the burdens the rule may impose on the woman who does not complain. . . .

"If we were to eliminate the fresh-complaint rule, rape victims would suffer whenever members of the jury held prejudices that women who do not complain have not really been raped. If we limit the fresh-complaint rule to the res gestae exception to the hearsay rule, allowing the admission of spontaneous or excited utterances, then women who had not complained very shortly after the crime would not be able to have their complaints admitted into evidence. . . . [Permitting] third-hand testimony of a rape complaint only in response to defense counsel's impeachment of the woman complainant on the grounds that she recently fabricated the charges . . . would allow the defense, and not the State, to control the circumstances under which the subject of a prior complaint is raised. As a result, the issue of a prior complaint would arise in a context prejudicial to the victim." *State* v. *Hill*, supra, 121 N.J. 164–65.

On the other hand, a defendant has an interest in not being unreasonably burdened by such accrediting or supporting evidence, which, as the defendant here correctly maintains, generally is not admissible in the trial of crimes other than sexual assault.[17] Concerns about such evidence are magnified if the victim has reported the alleged offense to a number of persons, all of whom are permitted to testify about the details of the com-

[17] "On the issue of credibility, in no other situation does Connecticut permit prior consistent statements to be introduced to accredit a witness's testimony. . . . Even after impeachment by prior inconsistent statements, Connecticut only admits such prior consistent statements to rebut a charge of recent fabrication." (Citation omitted.) C. Tait & J. LaPlante, Connecticut Evidence (Sup. 1995) § 11.22.1, p. 196.

plaint. In such circumstances, there is an enhanced risk that the jury may be unduly swayed by the repeated iteration of the constancy of accusation testimony. Indeed, one commentator has opined that testimony by multiple witnesses about the facts of the victim's complaint may so unfairly bolster the victim's credibility that, in such cases, "cross-examination of the victim is not a sufficient protection from prejudice." C. Tait & J. LaPlante, Connecticut Evidence (Sup. 1995) § 11.22.1, p. 196.

Our evaluation of these competing considerations persuades us that the scope of our current doctrine is broader than necessary to protect against the unwarranted, but nonetheless persistent, view that a sexual assault victim who does not report the crime cannot be trusted to testify truthfully about the incident. Although we are not yet willing to reject the constancy of accusation doctrine completely due to biases still extant in our society, we are persuaded that restricting the evidence adduced thereunder to testimony regarding the fact of the complaint provides a more reasonable accommodation of the interests of the defendant, the state and the victim than does our current rule.

In deciding to modify our constancy of accusation rule, we are not unmindful of the important role that the doctrine of stare decisis plays in our system of justice. Stare decisis, however, is not an end in itself. See, e.g., *Kluttz* v. *Howard*, 228 Conn. 401, 406, 636 A.2d 816 (1994). Thus, "[p]rinciples of law which serve one generation well may, by reason of changing conditions, disserve a later one. . . . Experience can and often does demonstrate that a rule, once believed sound, needs modification to serve justice better." (Citations omitted; internal quotation marks omitted.) *Connecticut Junior Republic* v. *Sharon Hospital*, 188 Conn. 1, 17–18, 448 A.2d 190 (1982). "The flexibility and capacity of the common law is its genius for growth

and adaptation." *State* v. *Dabkowski*, supra, 199 Conn. 199. We conclude that our previous rule no longer provides the most appropriate accommodation between the competing interests involved in sexual assault cases.[18]

Accordingly, we conclude that a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator.[19] In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the iden-

[18] We last undertook a comprehensive review of the efficacy of the constancy of accusation doctrine a decade ago in *State* v. *Dabkowski*, supra, 199 Conn. 193, wherein we reaffirmed the vitality of the rule. Although we more recently had occasion to consider the doctrine and its underpinnings in *State* v. *Kelley*, supra, 229 Conn. 557, we did not undertake a thorough reconsideration of the rule in that decision.

[19] Of course, the rule that we adopt today does not affect those cases in which the details of a sexual assault complaint are otherwise admissible, as, for example, in the case of a spontaneous utterance or in the case of a prior consistent statement admitted to rebut a claim of recent fabrication. Moreover, we recognize that the defendant, on cross-examination of a constancy witness, may elicit details of the victim's complaint for the purpose of demonstrating inconsistencies between the victim's trial testimony about the sexual assault and the victim's report of the incident. In such cases, the effect of our modification of the constancy of accusation doctrine is merely to shift the timing of the introduction into evidence of the details. See *State* v. *Kendricks*, supra, 891 S.W.2d 603 (excluding details from state's case-in-chief serves to require "courts to condition the admissibility of the details of the complaint upon the most fundamental principle governing the admissibility of a prior consistent statement—that the victim's credibility must have already been attacked before the rehabilitative evidence is admissible").

tity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant.[20]

In addition, the defendant is entitled to an instruction that any delay by the victim in reporting the incident is a matter for the jury to consider in evaluating the weight of the victim's testimony.

Finally, we conclude that the modification of the rule that we announce today will apply only to those cases in which constancy of accusation testimony has not yet been admitted into evidence on the date of the publication of this opinion. As we have previously indicated, our decision to modify the constancy of accusation doctrine is based solely on policy considerations and not on constitutional grounds. Consistent with our resolution of the defendant's sixth amendment claim; see part I of this opinion; we are not persuaded that the introduction of the details of the complaint for corroborative purposes violates the fair trial rights of defendants in sexual assault cases. Furthermore, we have frequently given only prospective effect to changes based strictly on policy considerations that do not carry constitutional implications. See, e.g., *Bennett* v. *Automobile Ins. Co. of Hartford*, 230 Conn. 795, 806, 646 A.2d 806 (1994); *State* v. *Patterson*, 230 Conn. 385, 397, 645 A.2d 535 (1994); *State* v. *Holloway*, 209 Conn. 636, 645–46, 553 A.2d 166, cert. denied, 490 U.S. 1071, 129 S. Ct. 2078, 104 L. Ed. 2d 643 (1989); *State* v. *Vilalastra*, 207 Conn. 35, 40, 540 A.2d 42 (1988).[21] Thus, we see no

---

[20] We note, for example, that the probative value of any such evidence may be greatly diminished, or even eliminated, in the rare case in which the defendant, in advance of trial, stipulates that the only contested issue is that of the identity of the perpetrator and not the actual occurrence of the sexual assault.

[21] Moreover, to apply our new rule retrospectively would place unreasonable burdens on the state and on victims whose constancy of accusation

reason to order a new trial in this or any other case in which testimony had been properly permitted under our former version of the constancy of accusation doctrine.[22]

## III

The defendant next claims that the trial court improperly denied his motion to strike the testimony of an expert witness for the state, Beverly DeLoatch, because she had violated the court's sequestration order. This claim is without merit.

On the day before the commencement of the evidentiary portion of the trial, the trial court granted the defendant's motion for an order requiring the sequestration of the state's witnesses[23] pursuant to General Statutes § 54-85a and Practice Book § 876.[24] DeLoatch, the counselor at the New Haven Rape Crisis Center to whom the victim had reported the attack, testified for the state, both as a constancy of accusation witness and as an expert on rape trauma syndrome. During cross-examination, DeLoatch acknowledged that sometime prior to testifying she had perused a document

---

testimony was admitted in justified reliance on our prior consistently applied law.

[22] Our decision to give only prospective effect to the modification of the doctrine is buttressed by the fact that the issue was raised, sua sponte, by the court and not raised by the parties prior to our order requesting supplemental briefing. See footnote 4.

[23] The defendant's motion requested that the trial court "direct the prosecuting authority to sequester each of its witnesses during the trial . . . [and] to warn each of its witnesses not to discuss with any other witness the contents of his/her testimony." The motion was granted.

[24] General Statutes § 54-85a provides that "[i]n any criminal prosecution, the court, upon motion of the state or the defendant, shall cause any witness to be sequestered during the hearing on any issue or motion or any part of the trial of such prosecution in which he is not testifying."

Practice Book § 876 provides that "[t]he judicial authority upon motion of the prosecuting authority or of the defendant shall cause any witness to be sequestered during the hearing on any issue or motion or during any part of the trial in which he is not testifying."

that "might have been" a copy of the written statement given by the victim to the police. DeLoatch further testified, however, that her recitation of the details of the sexual assault was based solely on her conversations with the victim and not on the written statement.[25] Furthermore, no evidence was adduced as to whether DeLoatch had reviewed the document before or after the sequestration order was entered. Finally, DeLoatch indicated that she had taken no notes during her conversations with the victim.

The defendant maintains that DeLoatch's review of the written statement constituted a violation of the trial court's sequestration order. He claims that because DeLoatch had kept no notes of her discussions with the victim, DeLoatch's trial testimony must have been based upon her reading of the victim's statement. The state contends, first, that the record is inadequate to review this claim because there is no evidence to establish that DeLoatch reviewed the statement subsequent

---

[25] DeLoatch testified in relevant part as follows:

"[Defense Counsel]: And did you, by the way, review any statements or police reports prior to your testimony today?

"[DeLoatch]: I think I did.

"[Defense Counsel]: Could you tell me what you reviewed?

"[DeLoatch]: A couple of pages of the statement, I think.

"[Defense Counsel]: [The victim's] statement that she gave to the police?

"[DeLoatch]: Yeah, it might have been.

"[Defense Counsel]: And that document contains the facts about what she relayed to the police, is that correct?

"[DeLoatch]: Probably, I didn't look at it all, it had a lot of pages.

"[Defense Counsel]: But you read that before you testified today?

"[DeLoatch]: Not in its entirety, no.

"[Defense Counsel]: But was it, the facts relating to what you testified today, concerning the specifics that—

"[DeLoatch]: I have not said anything today that I saw in the statement.

"[Defense Counsel]: I'm talking about what you testified about, some of the details, was that the parts of the statement that you read?

"[DeLoatch]: I don't remember seeing those. I skimmed it.

"[Defense Counsel]: Skimmed the entire statement?

"[DeLoatch]: You know, turned the pages looking."

to the trial court's order, and, second, that even if DeLoatch did read the statement after the sequestration order had been entered, her doing so did not violate the order.

The defendant concedes that "the record is . . . ambiguous as to the exact date on which Ms. DeLoatch reviewed the complainant's statement," yet claims error on the ground that "the spirit of the sequestration order" was violated. We reject the defendant's argument as frivolous. As the appellant, the defendant bears the burden of providing a record sufficient for review. Practice Book § 4061. A record that fails to disclose whether an alleged violation of a trial court's order occurred before or after the order was entered is plainly inadequate.[26] Accordingly, the defendant's claim must fail.

## IV

The defendant next claims that he was denied a fair trial in violation of his due process rights under the federal and state constitutions[27] because: (1) the state amended the charging information shortly before the commencement of jury selection, thereby depriving him of adequate notice of the charges against him; and (2) the state, in violation of the trial court's discovery order, failed to disclose a laboratory report for several months

___

[26] We note that the trial court denied the defendant's motion to strike DeLoatch's testimony because DeLoatch was never exposed to the victim's trial testimony, only to her pretrial statement to the police. Even if we presume that DeLoatch had reviewed a written version of the victim's statement after the sequestration order had been entered, we agree with the trial court that its sequestration order applied only to the in-court testimony of the state's witnesses; see footnote 23; and not to the pretrial statements of those witnesses.

[27] The fourteenth amendment to the United States constitution provides in relevant part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law . . . ."

Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be . . . deprived of . . . liberty . . . without due process of law . . . ."

after the report was issued. We are not persuaded by either of these claims.

## A

The original information filed by the state charged the defendant with two counts of sexual assault. Several months before trial, the state amended the information by adding a charge of unlawful restraint in the first degree in violation of General Statutes § 53a-95. On the day before jury selection commenced, the state filed a second amended information that charged the defendant with kidnapping in the first degree, a class A felony, in lieu of the charge of unlawful restraint in the first degree, a class D felony. The defendant moved to strike the second amended information and to reinstate the first amended information solely on the ground that the state had filed the kidnapping charge in retaliation for a speedy trial motion that the defendant had filed. The trial court concluded that the state's action was not retaliatory and, accordingly, denied the defendant's motion.

The defendant now asserts, for the first time on appeal, that the late amendment deprived him of adequate notice of the charges against him in violation of due process. The defendant, however, expressly disavowed this claim in his argument to the trial court in support of his motion to strike.[28] Thus, the record below

---

[28] Defense counsel argued in pertinent part as follows: "Previously the charge was unlawful restraint in the first degree, a class D felony, and today the state has filed an amended information charging kidnapping in the first degree, a class A felony. And I am objecting to that and I'm asking the court to strike that. *And while I don't think that it affects in this particular case any notice provisions that would be constitutionally required in terms of the defendant or just based on my information about the case and the previous charge of unlawful restraint in the first degree,* I do think it's objectionable on grounds of fundamental fairness and due process claims in terms of the defendant's right to a fair trial. And the reason that I suggest that is that this case has been pending for in excess of a year, and as we approach the onset of the trial and jury selection today right before the

contains nothing to substantiate the defendant's contention on appeal.[29] Because "[t]he defendant bears the responsibility for providing a record that is adequate for review of his [unpreserved] claim of constitutional error"; *State* v. *Golding*, 213 Conn. 233, 240, 567 A.2d 823 (1989); he cannot prevail on his claim that the trial court improperly denied his motion to strike the second amended information.

## B

The defendant also contends that his right to a fair trial was violated because the state failed to provide him with a laboratory report until the second day of jury selection, approximately six months after the report was completed. He claims error in the trial court's denial of his motion to exclude this evidence. We are not persuaded.

The defendant's comprehensive discovery motion was granted on January 6, 1993. On October 29, 1993, the prosecution turned over a laboratory report dated

panel is supposed to be brought down, the charges are increased from unlawful restraint in the first degree to kidnapping in the first degree. *And [the defendant] who has been going over this information with counsel can only suspect in his own mind that the penalty for going forward with a speedy trial motion and his rights to a jury trial have now been compromised by increasing the exposure that he has. And I just, I think it looks bad, I don't think it's fair to him, and I think that he could sit back and say, you know, what's going on here?* These charges have been pending for a long time, there hasn't been any amendments up to the date of this onset of the trial and now, as we're about to start picking a jury, my exposure increases from thirty years to fifty years. And I think it's objectionable. I don't think it makes the system look real good, and I don't think it's fair to [the defendant]. I think the case—and I think the state should be required to go forward under count three with a charge of unlawful restraint in the first degree. That's the basis of my objection. And my specific request is for the court to strike count three reinstating or ordering the state to revert back to the unlawful restraint first degree charge." (Emphasis added.)

[29] The defendant has not challenged the determination of the trial court that the late amendment of the information to include the kidnapping charge was not retaliatory.

April 30, 1993, which contained the results of certain testing that the state had conducted on several articles of the victim's clothing. The report indicated that seminal fluid was present on the clothing. The record does not reflect when the state initially received the report or why the report was not provided to the defendant earlier.

Upon receipt of the report, the defendant sought a postponement of the evidentiary portion of the trial until November 8, and the trial court, on November 1, granted the defendant's request.[30] On November 4, after a defense expert had reviewed the laboratory report and examined the clothing, the defendant filed a motion to exclude the results of the testing conducted by the state on the ground that certain tests that he wanted to have performed on the clothing would require too lengthy a delay of the trial. In argument to the trial court, the defendant explained that the testing procedures would have taken several weeks to complete.

Practice Book § 741 governs the defendant's right to information and materials from the state. At the time of the trial, that provision provided in relevant part as follows: "Upon a written motion made by a defendant . . . the prosecuting authority . . . shall disclose in writing the existence of and allow the defendant to inspect, copy, photograph and have reasonable tests made on any of the following relevant materials . . . (6) Copies of results or reports of scientific tests, experiments or comparisons made in connection with the particular case . . . which are material to the preparation of the defense or are intended for use by the prosecuting authority as evidence in chief at the trial . . . ." Practice Book § 747[31] gives the trial court broad leeway

---

[30] The defendant did not seek a postponement of the jury selection, which had commenced on October 28.

[31] At the time of trial, Practice Book § 747 provided in relevant part: "If the prosecuting authority fails to comply with Sec. 740, the judicial authority may . . . grant appropriate relief, which may include one or more of the following:

to determine what sanction, if any, may be appropriate if the state fails to comply with the rules of discovery. *State* v. *Cosgrove*, 186 Conn. 476, 489, 442 A.2d 1320 (1982); *State* v. *Perez*, 181 Conn. 299, 310, 435 A.2d 334 (1980). The question before us, then, is whether the trial court abused its discretion in denying the defendant's motion to exclude the report.

The primary purpose of a sanction for violation of a discovery order is to ensure that the defendant's rights are protected, not to exact punishment on the state for its allegedly improper conduct. As we have indicated, the formulation of an appropriate sanction is a matter within the sound discretion of the trial court. However, "[s]uppression of relevant, material and otherwise admissible evidence is a severe sanction which should not be invoked lightly." *State* v. *Festo*, 181 Conn. 254, 265, 435 A.2d 38 (1980). "In determining what sanction is appropriate for failure to comply with court ordered discovery, the trial court should consider the reason why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." (Internal quotation marks omitted.) *State* v. *Perez*, supra, 181 Conn. 310.

We conclude that the trial court acted within its discretion in denying the defendant's motion to exclude the laboratory report. The trial court granted the defendant's request for a postponement of the trial, and there is nothing in the record to suggest that the court would have rejected an application by the defendant for an additional continuance so that his expert could

"(1) Requiring the prosecuting authority to comply;

"(2) Granting the defendant additional time or a continuance;

"(3) . . . [P]rohibiting the prosecuting authority from introducing specified evidence, or dismissing the charges; or

"(4) Entering such other order as he deems proper."

Section 747 was subsequently repealed, effective October 2, 1995, and has been incorporated into § 735A.

have conducted further tests on the clothing. The defendant, however, elected not to seek a further continuance. In addition, the defendant has not alleged, or proven, that the state intentionally withheld the report to gain a tactical advantage or for some other improper purpose. Finally, the defendant has not demonstrated any prejudice flowing from the late disclosure of the report, with respect to either his speedy trial rights or his ability to present a defense.[32] Accordingly, the defendant has not satisfied his burden of establishing that the trial court improperly failed to prohibit the state from introducing the test results.

V

The defendant's final claim is that General Statutes § 53a-92 (a) (2) (A), kidnapping in the first degree, is unconstitutionally vague as applied to the facts of this case. We disagree.

Section 53a-92 (a) (2) (A) provides that a "person is guilty of kidnapping in the first degree when he abducts another person and . . . he restrains the person abducted with intent to . . . inflict physical injury upon him or violate or abuse him sexually." As defined in General Statutes § 53a-91 (1), " '[r]estrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . ." As charged in the information, the defendant was accused of confining the defendant in the place where the restriction commenced.[33] The defendant claims that because §§ 53a-92

_____

[32] We note that the defendant, who presented no evidence in his defense, did not seriously contest the victim's claim that they had engaged in sexual intercourse. Instead, the defendant, in closing argument, contended that the state had failed to establish beyond a reasonable doubt that the sexual contact was not consensual.

[33] The third count of the second amended information provides: "And the [Assistant State's] Attorney . . . further accuses Floyd Troupe of Kidnap-

(a) (2) (A) and 53a-91 (1) do not define a minimum period of time necessary to constitute impermissible confinement, the statute is unconstitutionally vague because, "[t]heoretically, the briefest, most incidental constraint would, if combined with the other elements, warrant a charge of kidnapping." The defendant also claims that under those statutory provisions, the restraint necessary to effect the sexual assault would itself constitute confinement, thereby allowing a jury to convict a defendant of kidnapping in the first degree solely on the basis of proof of a sexual assault, a result which, the defendant maintains, gives rise to the "specter of standardless law enforcement." Whatever possible merit these arguments might have in another factual setting, they fail under the facts of this case.

"Due process requires that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and provide explicit standards for those who apply them in order to prevent the risk of arbitrary and discriminatory enforcement. . . . In a case such as this, where first amendment freedoms are not implicated, a claim that a statute is void for vagueness is determined by its applicability to the particular facts presented. . . . The fact that a statutory provision may be of questionable applicability in speculative situations is usually immaterial if the challenged provision applies to the conduct of the defendant in the case at issue." (Citations omitted; internal quotation marks omitted.) *State* v. *Tweedy*, 219 Conn. 489, 502–503, 594 A.2d 906 (1991).

---

ping in the First Degree and charges that at the City of New Haven, on or about the 18th day of August 1992, at approximately 11:00 p.m., at 194 Wolcott Street, the said Floyd Troupe did abduct by use of physical force, another person and restrained the person abducted by confining her in the place where the restriction commenced with the intent to violate or abuse her sexually, in violation of Section 53a-92 (a) (2) (A) of the Connecticut General Statutes."

The defendant has not established that the challenged statutory provisions are impermissibly vague as applied to this case. The state adduced evidence that the defendant refused to allow the victim to leave his apartment several times before, during and after the sexual assault took place. The victim first attempted to leave the defendant's apartment when she realized that he was not interested in going shopping with her. The defendant, ignoring the victim's repeated requests that she be permitted to return to her car, prevented her from doing so by kneeling down in front of her and forcing her to remain on the couch. When the victim resisted and sought to leave, the defendant succeeded in pulling her down to the floor. The victim eventually managed to escape his grasp and, once again, tried to flee. The defendant, however, barred her departure by force. Finally, after the defendant had sexually assaulted the victim, he detained her in the apartment until he had finished dressing. Thus, the defendant restrained the victim for a considerable period of time by repeatedly and forcibly thwarting her efforts to leave the apartment. As we have previously noted in considering a vagueness claim similar to that made by the defendant, "[w]hile we recognize that there are conceivable factual situations in which charging a defendant with kidnapping based upon the most minuscule [duration of confinement] would result in an absurd and unconscionable result . . . we do not find this case to present such a situation." (Citation omitted; internal quotation marks omitted.) Id., 503. We therefore reject the defendant's constitutional claim.

The judgment is affirmed.

In this opinion PETERS, C. J., and CALLAHAN, BORDEN and KATZ, Js., concurred.

BERDON, J., with whom, NORCOTT, J., joins, concurring. I am pleased that the majority has trimmed the

sails of the rule pertaining to constancy of accusation evidence in sexual assault cases; *State* v. *Kelley*, 229 Conn. 557, 575–79, 643 A.2d 854 (1994) (*Berdon, J.,* dissenting);[1] but I feel it has not gone far enough to ameliorate the prejudice to defendants.[2]

I agree that the elimination of the details of the alleged sexual assault will reduce some of the prejudice to the

---

[1] In *State* v. *Kelley*, supra, 229 Conn. 575–79, I wrote in dissent: "I continue to be concerned about the contours of the rule admitting constancy of accusation evidence in sexual assault cases. *State* v. *DePastino*, 228 Conn. 552, 573, 638 A.2d 578 (1994) (*Berdon, J.,* dissenting). In the present case, on appeal, the defendant argues that the rule is founded on premises that are anachronistic, outmoded and sexist.

\* \* \*

"Simply put, the hearsay exception of constancy of accusation is predicated on the assumption that unless the victim—who in most instances is a female—announces to the world that she has been a victim of a sex crime, her credibility is suspect. Indeed, the majority endorses this justification when it states that 'it would be natural for the victim of actual or attempted sexual assault to relate the incident to others if it had actually happened, but not if the incident had not occurred.' I find this rationale to be offensive. We do not engage in this reasoning with respect to any other crime involving an adult victim.

"Furthermore, the empirical assertion that an actual victim of sexual assault would naturally relate the incident to others stands in opposition to the real experiences of women reported in the literature. S. Estrich, 'Rape,' 95 Yale L.J. 1087, 1088–89 (1986). In addition, the second assumption underlying this empirical claim—'but not if the incident had not occurred'—defies common sense. If anything, the rule gives a person who has fabricated an assault an incentive to report the crime and its 'details' to friends and acquaintances. Therefore, constancy evidence not only has its origin in a sexist assumption, but allows inherently unreliable evidence to support a criminal conviction."

[2] I continue to have serious reservations about whether the constancy of accusation rule of evidence violates the confrontation clause of the United States constitution. (State constitution was not raised by the defendant.) See *State* v. *DePastino*, 228 Conn. 552, 573, 638 A.2d 578 (1994) (*Berdon, J.,* dissenting). I also question the continued validity of the 1970 case of *California* v. *Green*, 399 U.S. 149, 158, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970) ("Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination"). Nevertheless, because the defendant relies solely on the federal constitution, and *Green* has not been

defendant, but, without further restrictions, the prejudicial impact of the constancy evidence still outweighs its probative value. This court justifies the continuation of the rule in a modified form in part on the ground that constancy evidence is admissible "only to corroborate the victim's testimony and not for substantive purposes." As any trial lawyer can attest, prosecutor or defense counsel, this distinction is academic in the real world of criminal trials. It is clear that the prejudicial impact of constancy evidence is not eliminated merely because the trial judge instructs the jury that it is admitted only for corroboration. The distinction between corroborative evidence and substantive evidence has no meaning to the average juror. Constancy of accusation evidence bolsters the victim's courtroom story, rendering it more credible as if there was another witness to the sexual assault. See *Krulewitch* v. *United States*, 336 U.S. 440, 453, 69 S. Ct. 716, 93 L. Ed. 790 (1949) (Jackson, J., concurring) ("[t]he naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction" [citation omitted]).

The sole justification for maintaining any form of the rule is the belief that some jurors may adhere to a sexist presumption of fabrication or consent unless the victim complains to a third party, because they believe that it would be natural, and expected, for a woman who had been sexually assaulted to complain. *State* v. *Wells*, 522 N.W.2d 304, 308 (Iowa 1994); *State* v. *Hill*, 121 N.J. 150, 158–63, 578 A.2d 370 (1990); 4 J. Wigmore, Evidence (4th Ed. 1972) § 1135. I must concede that there may be some jurors, who are able to survive the vigorous jury voir dire conducted by the state, who may harbor such a notion. That belief, however, more likely than not, will impact jury deliberations only when there is

specifically overruled by the United States Supreme Court, I leave this issue for another day.

some doubt whether the victim was in fact assaulted, and not in cases where the only issue is the identity of the assailant. Accordingly, I would limit the admissibility of constancy of accusation evidence solely to those instances where the defendant, either through cross-examination or direct testimony, asserts that the victim was not sexually assaulted, either because the sexual intercourse at question was consensual or because it never occurred. See *Hunt* v. *State*, 44 Ala. App. 479, 480, 213 So. 2d 664 (1968) ("complaint in rape and statutory rape is admissible . . . to show conduct by the prosecutrix which is consistent"); *Barnes* v. *State*, 171 Ga. App. 478, 481, 320 S.E.2d 597 (1984) ("in a prosecution for rape, the fact of the woman's having made complaint soon after the assault took place is admissible in evidence for the purpose of rebutting the idea that the female consented" [internal quotation marks omitted]); *State* v. *Wells*, supra, 308 ("justification for admitting such statements is to thwart the . . . assumption that the offense did not occur in the absence of a complaint"); *State* v. *Hill*, supra, 163 (fresh complaint rule "allows the State to negate the inference that the victim was not sexually assaulted because of her silence").

Although the scope of the details to which a constancy of accusation witness may testify have been narrowed, this court continues to permit a witness to testify as to "the identity of the alleged perpetrator." If the singular concern that justifies the rule relates to the improper inference jurors may draw from a victim's silence, then the prosecution should only be allowed "to forestall this . . . assumption by showing that the woman was *not silent*, i.e., that *a complaint was in fact made*." (Emphasis in original.) 4 J. Wigmore, supra, § 1135, p. 299; see also *Hunt* v. *State*, supra, 44 Ala. App. 480 (constancy of accusation testimony is not admitted for corroboration, thus details of complaint

are not admissible); *State* v. *Wells*, supra, 522 N.W.2d 308 ("underlying details of the complaint are immaterial to the purpose of the offer and inadmissible"); *State* v. *Hill*, supra, 121 N.J. 163 ("[o]nly the fact of the complaint, not the details, is admissible"). The testimony of a constancy of accusation witness should be confined to the fact that the victim complained of being assaulted. Therefore, the name or identity of the accused should be excluded. See *Aaron* v. *State*, 273 Ala. 337, 345, 139 So. 2d 309 (1961) ("In prosecutions for rape the State may, on the direct examination of the prosecutrix, prove the bare fact that she made complaint of the injury, and when and to whom . . . . This would exclude any statement made in the complaint pointing out the identity of the person accused . . . ."); *Register* v. *State*, 640 So. 2d 3, 9 (Ala. Crim. App. 1993); *Barnes* v. *State*, supra, 171 Ga. App. 481–82; *People* v. *Jackson*, 3 Ill. App. 3d 303, 307, 279 N.E.2d 8 (1971) ("person to whom the complaint was made can properly testify to the fact that it was made, although it is not proper for such person to give the name of the accused"); *State* v. *Wells*, supra, 308; *State* v. *Hill*, supra, 163. Of course, the accused, either through cross-examination or direct testimony, may open the door for the admission of the details of the victim's complaint, including the identity of the alleged assailant.

Furthermore, the rule should be returned to its original parameters and restricted to a fresh complaint; see *State* v. *De Wolf*, 8 Conn. 93, 100 (1830); which was "made within a reasonable time after the alleged assault and must have been spontaneous and voluntary." *State* v. *Hill*, supra, 121 N.J. 163. "[S]tatements that are procured by pointed, inquisitive, coercive interrogation lack the degree of voluntariness necessary to qualify under the fresh-complaint rule." Id., 167. Voluntariness, however, must be determined on a case-by-case basis and left to the discretion of the trial court. "Among the

factors a court should consider in making that determination are the age of the victim; the circumstances under which the interrogation takes place; the victim's relationship with the interrogator, i.e., relative, friend, professional counselor, or authoritarian figure; who initiated the discussion; the type of questions asked—whether they are leading and their specificity regarding the alleged abuser and the acts alleged." Id., 168. Finally, the trial court should be instructed that, it may, within its discretion, exclude cumulative fresh-complaint evidence. "[I]n close cases in which the victim's complaint has already been once established and it appears that repeated fresh-complaint testimony would leave the jury with the impression that the State has gathered a greater number of witnesses than the defense, the trial court may properly exercise its discretion and exclude the testimony." Id., 169–70.

It is worthwhile to note, as the majority appears to underscore, that the bottom line regarding the admissibility of any constancy evidence remains within the discretion of the trial judge. Therefore, even if an offer of constancy evidence by the state does not include the details of the alleged sexual assault, the trial court must still weigh whether its prejudicial impact outweighs its probative value, so as to determine whether to further limit the testimony in accordance with the guidelines set forth in this concurrence or to reject the offered constancy testimony in total.

In summary, I would limit the rule as follows: (1) constancy evidence would be admissible only if the defendant, either through cross-examination or through direct testimony, asserts that the victim was not in fact sexually assaulted; (2) the complaint must be made within a reasonable time after the alleged assault, or any delay must be reasonably explained; (3) the victim's complaint must be voluntarily made; (4) constancy testimony must be confined, on direct, to the fact that the

victim complained, and should not contain details of the complaint, including the identity of the alleged assailant; and (5) the trial judge has discretion to exclude cumulative constancy evidence. Only then would the rule have been trimmed in a manner that does not exceed its purpose, while minimizing the prejudicial impact on the defendant.

As a matter of public policy, the constancy of accusation evidence rule may be justified if circumscribed as indicated above.[3] In my view, the contours of the rule adopted today by the court continue to exceed that which is required to meet its purpose.

In all other respects, I concur with the majority opinion.

---

[3] In other situations, where we have allowed collateral evidence for the purpose of bolstering the credibility of the victim, that evidence did not also indicate guilt as does constancy evidence. For example, in *State* v. *Borrelli*, 227 Conn. 153, 629 A.2d 1105 (1993), we allowed expert evidence on the battered woman's syndrome to be presented, but only after the complaining witness was impeached. In that situation, the nature of the expert testimony did not implicate the guilt of the defendant for the specific crime for which he was being tried. Rather, it merely gave a scientific explanation for the apparent inconsistency of the complaining witness' trial testimony and her prior out-of-court statements. Id., 172.