[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a petition for a writ of habeas corpus filed by petitioner now in the custody of respondent. By her third amended petition, petitioner alleges in count one that her incarceration is illegal in that her conviction and sentence were the result of ineffective assistance of counsel in violation of the sixth and fourteenth amendments to the United CT Page 15049 States Constitution, and Article 1, § 8 of the Connecticut Constitution. In the second count petitioner alleged that she is factually innocent of all criminal charges. For reasons hereinafter stated, the petition is dismissed.
The evidence indicates that in May, 1995, petitioner was arrested and charged with promoting prostitution in the first degree in violation of C.G.S. § 53a-86 a class B felony, and two counts of the unclassified felony of risk of injury to, or impairing the morals, of a child in violation of C.G.S. § 53-21. Petitioner was initially represented by a special public defender. Later she retained the services of Attorney Charles Thompson who represented her throughout the proceedings but was allowed to withdraw after conviction. He then remained in a standby status. The allegations of ineffective assistance of counsel pertain to Attorney Thompson's representation of petitioner.
Attorney Thompson represented petitioner during pretrial proceedings and the trial. The case was tried before a jury in September, 1996, and resulted in a verdict of guilty to all counts on September 25, 1996. Petitioner, having been convicted of all counts in the information on August 29, 1997, a total effective sentence of eighteen years execution suspended after fourteen years with five years probation was imposed.
 I
The first count of the third amended petition sets forth allegations to the effect that Attorney Thompson's representation of petitioner was constitutionally inefficient. It is alleged that Attorney Thompson failed to adequately pursue discovery and investigation prior to trial and did not advise petitioner of any preparation effort on her behalf.
It is also alleged that the attorney failed to secure a "child's expert" to testify and assist him at trial. Petitioner also alleged that she insisted she be allowed to exercise her constitutional right to testify on her own behalf at trial but that the attorney advised her not to testify. Her waiver of this right, she alleges, was not knowingly and intelligently made due to this improper advice.
The petition also alleges that she directed Attorney Thompson to call Jose Cubano as a witness but the attorney refused to do so.
The petition contains other allegations of ineffective assistance of counsel on the part of Attorney Thompson.
"The standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in CT Page 15050Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice thus, he must establish not only that his counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome . . . . Bunkley v. Commissioner of Correction, 222 Conn. 444, 445-46,610 A.2d 592 (1992)." Mercer v. Commissioner of Correction,51 Conn. App. 638, 640-41 (1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
The better evidence leads to the conclusion that Attorney Thompson took advantage of the state's open file system and adequately prepared for trial. It is also found that he met with petitioner, who was out on bond, and Jose Cubano with whom petitioner had been living with for a number of years. There were a number of such meetings at which the progress of the case and possible witnesses was discussed. It was understood that the state's case against petitioner would be based primarily on the testimony of her daughter. Petitioner felt that her daughter would not be a good witness and that she should go to trial. The decision to go to trial was made by petitioner.
The case came to trial before the Honorable Bernard D. Gaffney and a jury in September, 1996. As anticipated, the principal witness called by the state was petitioner's daughter, Mary. She testified that when she was about ten or eleven years of age on a number of occasions petitioner would go in an automobile driven by Richard Tomzuk. Petitioner and Tomzuk would be seated in the front seat while she and her infant brother would be in the back seat. On these occasions, the car would be parked and petitioner would perform oral sex on Mr. Tomzuk for money so that she could purchase drugs. This would be done in full view of Mary and the infant. Mary also testified, that on occasions, at which she would be present in their apartment, petitioner would engage in sexual activity for CT Page 15051 money for drugs with a man called Don Don the Leprechaun. The man's correct name was Dominick Torella.
The daughter also testified, that on numerous occasions petitioner would force her to engage in acts of prostitution for money to finance petitioner's drug habit. The testimony was that petitioner would use physical punishment to force the child to engage in these activities. There apartment was near a car wash and a Henny Penny store. Both of these facilities were open late at night. Mary testified that on several occasions she was dragged from bed by petitioner and forced to go to these facilities and prostitute herself so that petitioner could finance her drug habit.
The child also testified, that on one occasion she was forced to "French kiss" Don Don the Leprechaun for money.
The state called other witnesses to corroborate Mary's testimony and to supply some circumstantial evidence. These witnesses included police officers and persons from Mary's school.
For the defense, Attorney Thompson called Don Don the Leprechaun, Mr. Torella, who denied he had engaged in any of the sexual acts described by Mary. It was alleged, and the petitioner claims, that Attorney Thompson was deficient in not calling other witnesses recommended by petitioner.
Petitioner claims that her constitutional right to testify on her own behalf was lost because of her attorney. Attorney Thompson testified that he did not think it would be in his client's best interest to testify and he so advised her. Petitioner agreed that she would not testify. The attorney testified that he left it up to petitioner and she agreed with his recommendation that she should not testify. Judge Gaffney was informed of this decision. The judge discussed the matter with petitioner on the record informing her of her right to testify and questioning her as to what her decision was. In open court, petitioner repeated her election not to testify.
It must be concluded, that petitioner's decision not testify was voluntary and that none of her constitutional rights were violated. The recommendation that she not testify was based on the attorney's concerns that it would bring before the jury petitioner's drug history which, according to Mary, was the motive for her actions.
Attorney Thompson was also faulted for not calling as a witness Jose Cubano. Mr. Cubano would have testified as to the good relations between petitioner and Mary as well as Mary's apparent good health and happiness. The attorney did not want to call Mr. Cubano primarily because Mr. Cubano CT Page 15052 and petitioner, who were both in a drug rehabilitation program, were convinced that the charges against petitioner were the result of a conspiracy by the Department of Children and Family and that Cubano, who was quite adamant on this point and would lack credibility only hurting petitioner's case. This was a tactical decision made by an experienced trial attorney.
Other witnesses recommended by petitioner and not called by Attorney Thompson were Frank Donnelly, Ralph Medina and Milagros Medina. These people testified in the habeas proceedings. If called at trial, the substance of their testimony would have been to the effect that they observed petitioner and her daughter at about the time of the claimed criminal activity and that the mother-daughter relationship appeared to be normal and they never observed any bruises on the child.
Attorney Thompson did not call Donnelly because he felt that Donnelly was not involved in the case. He did not recall Milagros Medina being recommended by petitioner.
Petitioner claims that Attorney Thompson was requested to call witnesses described as the "Coneheads". The attorney testified that he was never informed as to who the "Coneheads" were. At the habeas trial, Joanne Marianni was called as a witness. it was established that she was one of the "Coneheads". Her testimony was that at the time of the criminal activity was to alleged to have occurred, she lived in the same house as petitioner and her family and that her kitchen family overlooked the carwash and the Henny Penny. She testified that she would occasionally look out the window and that she never saw Mary at either of these establishments. Mrs. Marianni would also testify that on occasion she would talk to Mary and that the child never mentioned prostitution or drugs to her.
After a review of the entire transcript of the jury trial, it cannot be found that the failure to call these witnesses would have effected the outcome of the trial. The testimony of these witnesses at the habeas trial was not compelling and was circumstantial at best. The state's case against petitioner was successful only because of the testimony of petitioner's daughter. Attorney Thompson skillfully cross-examined the child at length and developed numerous inconsistencies in her testimony. The jury, however, chose to accept the child's testimony resulting in petitioner's conviction.
The petitioner alleges that Attorney Thompson was deficient in not retaining the services of a "child's expert. There was no credible evidence, however, that the services of such an expert would be of assistance to petitioner case or that it would have made a difference in CT Page 15053 the outcome of the case.
It was alleged in the petition and petitioner's expert witness faulted Attorney Thompson for not making repeated objections to the scope of constancy of accusation testimony in accordance with State v. Troupe,237 Conn. 284 (1996). He was also faulted for not moving to strike any such testimony admitted. The striking of this testimony, the expert opined, would have a substantial effect on the jury. The transcript, however, reveals the attorney did object to the scope of the constancy testimony, and was successful in keeping some of it out. Attorney Thompson testified that it would served no purpose to keep repeating the objections and would only have antagonized the judge. The attorney also testified that once the judge had ruled on the issues, a motion to strike would serve no purpose. A review of the transcript of the trial leads to the conclusion that Attorney Thompson's defense of the petitioner was thoroughly professional exhibiting a sound knowledge of the law and procedure. Throughout the trial, the attorney made timely objections and appropriate motions. It has not been established that Attorney Thompson's performance, at trial or in preparation for trial, in any way fell below the required standard of reasonable competence displayed by lawyers with ordinary training and skill in criminal law.
 II
The second count of the petition alleges that petitioner is factually innocent of all criminal charges and maintained her innocence throughout the proceedings. In attempting to prove actual innocence in a habeas corpus proceeding, petitioner has assumed a high burden of proof. Millerv. Commissioner of Corrections, 242 Conn. 745 (1997). A review of the transcript and the evidence submitted at trial and considering all of the evidence admitted at the habeas corpus proceedings, it must be concluded that petitioner has failed to sustain the burden of proof that she is factually innocent of the crimes for which she was convicted.
Accordingly, judgment is rendered dismissing the petition.
Joseph J. Purtill, Judge Trial Referee