# STATE OF CONNECTICUT *v.* MARCIAL S.[1]
## (AC 26479)

Flynn, C. J., and Harper and Dupont, Js.

Argued September 11—officially released November 6, 2007

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

*Michael L. Moscowitz*, for the appellant (defendant).

*Kathryn Ward Bare*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Eugene R. Calistro, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Marcial S., appeals from the judgment of conviction, rendered after a jury trial, of three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that the trial court (1) improperly admitted (a) hearsay evidence and (b) constancy of accusation testimony, and (2) improperly charged the jury on reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Beginning when the victim was approximately four years old, she periodically was sexually assaulted in her home by her father, the defendant. According to the victim's testimony, these assaults took place sporadically and without any set pattern following the first incident. Shortly after the first incident, the victim told her older sister about what had happened. The victim does not recall how her sister reacted to the information disclosed.

The victim did not tell anybody else about the assaults until she was in the fourth grade, when she told a classmate, A, that her father was touching her inappropriately. Later, in the sixth grade, the victim also told A

that she feared she was pregnant. When asked by A whom she thought the father was, the victim said it was the defendant. Because the victim requested that A keep her secret, A did not tell anybody about the victim's disclosures. Following the victim's birthday in February, 2003, the victim also disclosed to her classmate, B, that the defendant had molested her a few days earlier. At about the same time, in late February, 2003, the victim and the defendant were engaged in a dispute over her telephone privileges. During this same period, the defendant also was engaged in a dispute with the victim's older sister.

On March 3, 2003, the Monday following her disclosure to B, the victim told her sixth grade teacher that "since I was four years old, my father has been touching me in inappropriate places." The teacher had the victim repeat her disclosure to the school nurse; the teacher and the nurse then notified the department of children and families (department), which, in turn, called the local police. A police detective then arrived at the school and took the victim's signed statement. Shortly thereafter, the defendant was arrested, and the department referred the victim to the Yale-New Haven Hospital child sexual abuse evaluation program (Yale Clinic) for a medical evaluation.

The defendant's case was tried in November and December, 2004. Following the jury's verdict of guilty of all counts charged, the defendant was sentenced on April 1, 2005, to a total effective term of imprisonment of forty years, suspended after thirty-five years, and ten years probation. This appeal followed. Additional facts will be set forth as necessary.

I

EVIDENTIARY RULINGS

As a preliminary matter, the state argues that this court should decline to review the defendant's two evidentiary claims on appeal because he did not meet his

burden of alleging harm as is required under *State* v. *Sawyer*, 279 Conn. 331, 358, 904 A.2d 101 (2006). We conclude that the defendant adequately briefed the issues, and, therefore, we will reach their merits.

Our review of claims of evidentiary impropriety grants to the "trial court . . . broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Kelly*, 256 Conn. 23, 44, 770 A.2d 908 (2001).

A

The defendant first claims that the court improperly admitted evidence under the medical treatment exception to the hearsay rule. Specifically, the defendant asserts that the testimony given by Janet Murphy, a nurse practitioner from the Yale Clinic, was admitted improperly because the victim was referred to Murphy by a department social worker in order to gather evidence rather than for medical treatment. Under the same logic, the defendant likewise asserts that Murphy's written report of the medical examination was admitted improperly. We do not agree.

The following additional facts are required for the resolution of this issue. Murphy is a licensed nurse practitioner who, pursuant to General Statutes § 20-87a, may, "in collaboration with a physician licensed to practice medicine in this state, prescribe, dispense and administer medical therapeutics and corrective measures . . . ." On March 11, 2003, the victim was seen at the Yale Clinic by Murphy. An examination by Murphy revealed that the victim displayed no outward signs of physical trauma but that she had a "[c]lear history of sexual abuse by [her] biological father, including vaginal-penile penetration and oral-penile penetration." In her testimony, Murphy stated that "normal"

physical results did not surprise her because a few weeks had passed between the examination and the most recent alleged assault. Murphy also noted that the victim had reached puberty, at which point the vaginal area is able to more readily heal itself from injury. During the examination, Murphy also observed some discharge and treated the victim for a yeast infection.[2] On March 26, 2003, Murphy completed a second physical examination of the victim that also yielded normal results.

In addition to conducting physical evaluations of the victim, Murphy also evaluated her medical history. That history revealed that when the victim was younger, she had suffered recurrent urinary tract infections. In her testimony, Murphy stated that when imaging studies of elimination organs were performed on the victim with normal results, questions should have been raised as to the origin of the infections. Murphy then opined that "one thing we do know is adult women who are sexually active do get more urinary tract infections than women who are not sexually active . . . so it does raise that question . . . when there is more than one urinary tract infection."

The medical treatment exception is a long-standing exception to the hearsay rule of evidence that applies to statements "made for purposes of obtaining medical treatment or advice pertaining thereto and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical treatment or advice." Conn. Code Evid. § 8-3 (5); see also State v. Aaron L., 272 Conn. 798, 814, 865 A.2d 1135 (2005). "The rationale

---

[2] A culture taken from a swab of the victim's genital area on March 11, 2003, revealed that the cause of the discharge was unknown and, according to Murphy, "not related to sexual abuse."

underlying the medical treatment exception to the hearsay rule is that the patient's desire to recover his health . . . will restrain him from giving inaccurate statements to a physician employed to advise or treat him." (Internal quotation marks omitted.) *State* v. *Cruz*, 260 Conn. 1, 7, 792 A.2d 823 (2002); see also C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.20.2, p. 634. Pursuant to *Cruz*, the sole factor to examine in determining the admissibility of evidence under the medical treatment exception is whether the statements are made within the "medical chain" for the purpose of obtaining diagnosis or treatment and are pertinent to the diagnosis or treatment sought. See *State* v. *Cruz*, supra, 7–10.

In the present case, both the referring social worker from the department and Murphy stated in their testimony that any evidence gathered at the Yale Clinic was incidental to the medical component of the examination. The referring social worker explained that "when we make referrals to Yale Sexual Abuse Clinic, a medical . . . examination is done. If there is evidence that's collected, then evidence is collected. But we always do a medical examination . . . if we can." When asked by defense counsel about potential evidence gathering at the examination, Murphy responded that the examination "was more focused on medical needs." The impetus for the examination as stated by the victim to Murphy was to "check her for any damage." Although the defendant interprets the victim's reasoning as corroboration for the evidence gathering function of the examination, "checking for damage" equally could have been a medically motivated statement, considering the potential for internal injury, sexually transmitted diseases or pregnancy under the circumstances of the case. Furthermore, Murphy did medically treat the victim for what she thought might have been a yeast infection on March 11, 2003, and conducted a follow-up visit on March 26.

The hearsay rule equally excepts statements made to medical personnel when seeking "advice." See Conn. Code Evid. § 8-3 (5), supra. The victim's statement that she was at the Yale Clinic to check for "damage" also could be interpreted to mean that she was there in search of advice about how to proceed as a victim of sexual assault. Accordingly, under the theory of either medical treatment or advice, the testimony given by Murphy, as well as her written report, properly were admitted by the court under the medical treatment exception to the hearsay rule.

B

The defendant next claims that the court improperly admitted A's testimony in violation of the limitations to the constancy of accusation doctrine enumerated in *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc). The defendant asserts that A's testimony was admitted improperly because it was offered "for substantive purposes and not to corroborate the victim's testimony." The state argues that the testimony properly was admitted. We agree with the state.

The following additional facts are necessary in order to resolve the defendant's claim. At a pretrial evidentiary hearing, the court held that A could testify at trial about the victim's multiple disclosures to her as a rebuttal to the defendant's claim that the sexual assault allegations were a recent fabrication.[3] The court noted that it would allow the testimony as a prior consistent statement to rebut a defense theory of recent fabrication under *State* v. *Troupe*, supra, 237 Conn. 304 n.19 (constancy of accusation doctrine does not affect otherwise admissible testimony concerning details of sexual

[3] The defendant asserted that the victim had fabricated the sexual assault allegations because she was angry with him following a dispute in late February that arose when the defendant disconnected a telephone call between the victim and B.

assault allegations). The court further noted, however, that it would limit the testimony in a *"Troupe* like" fashion. The court reiterated this ruling at trial after an objection by defense counsel prior to A's testimony.

At trial, the following colloquy occurred between A and the prosecutor:

"[The Prosecutor]: . . . [A], did [the victim] tell you something that happened to her?

"[The Witness]: Yes.

"[The Prosecutor]: Did she tell you that anyone touched her in an inappropriate manner?

"[The Witness]: Yes.

"[The Prosecutor]: Did she say who did this to her?

"[The Witness]: Yes.

"[The Prosecutor]: Who was that person?

"[The Witness]: Her dad.

"[The Prosecutor]: When was the first time that she disclosed that to you, [A]?

"[The Witness]: Ah, about the end of fourth grade.
. . .

"[The Prosecutor]: Were there other times that she told you what was happening to her in this . . . manner we've already described?

"[The Witness]: Yes.

"[The Prosecutor]: Okay. How often?

"[The Witness]: Um, like twice a month."

Prior to 1974, a prosecution for sexual assault required corroborative evidence. See General Statutes (Rev. to 1969) § 53a-68, which provided in relevant part that "[a] person shall not be convicted of any offense

under this part, or of an attempt to commit such offense, solely on the uncorroborated testimony of the alleged victim, except as hereinafter provided. Corroboration may be circumstantial. . . ." That requirement was then repealed by the General Assembly in Public Acts 1974, No. 74-131.

Judicial decisions rendered after that development, concerning the constancy of accusation doctrine's rationale, were summarized recently by our Supreme Court in *State* v. *McKenzie-Adams*, 281 Conn. 486, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007). "The constancy of accusation doctrine traces its roots to the fresh complaint rule . . . [t]he narrow purpose of [which] was to negate any inference that because the victim had failed to tell anyone that she had been [sexually assaulted], her later assertion of [sexual assault] could not be believed. . . . Because juries were allowed—sometimes even instructed—to draw negative inferences from the woman's failure to complain after an assault . . . the doctrine of fresh complaint evolved as a means of counterbalancing these negative inferences. Used in this way, the fresh complaint doctrine allowed the prosecutor to introduce, during the case-in-chief, evidence that the victim had complained soon after the [sexual assault]. Its use thereby forestalled the inference that the victim's silence was inconsistent with her present formal complaint of [assault]. . . . In other words, evidence admitted under this doctrine effectively served as anticipatory rebuttal, in that the doctrine often permitted the prosecutor to bolster the credibility of the victim before her credibility had first been attacked. . . . The fresh complaint doctrine thus constituted a rare exception to the common-law rule that prohibited rehabilitative evidence in the absence of an attack on the witness's credibility. . . .

"In *State* v. *Troupe*, supra, 237 Conn. 303, [our Supreme Court] observed that the state and the victim

both have a legitimate interest in protect[ing] against the unwarranted, but nonetheless persistent, view that a sexual assault victim who does not report the crime cannot be trusted to testify truthfully about the incident. On the other hand, [our Supreme Court] observed that a defendant has an interest in not being unreasonably burdened by such accrediting or supporting evidence, which . . . generally is not admissible in the trial of crimes other than sexual assault. . . . In light of these competing interests, [our Supreme Court] rejected the then existing rule that a person to whom a sexual assault victim had complained could provide substantive testimony with respect to the incident. . . . Instead, [our Supreme Court] concluded that a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant."[4] (Citations omitted; internal quotation marks

---

[4] Our Supreme Court's modification of the constancy of accusation rule in *Troupe* later was codified in § 6-11 of the Connecticut Code of Evidence, which provides: "A person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made, provided the victim has testified to the facts of the alleged assault and to the identity of the person or persons to whom the assault was reported. Any testimony by the witness about details of the assault shall be limited to those details necessary to associate the victim's allegations with

omitted.) *State* v. *McKenzie-Adams*, supra, 281 Conn. 539–40; see also *State* v. *Troupe*, supra, 293–305.

The defendant argues that A's testimony went beyond the limitations enumerated in *Troupe* because "nowhere did [the victim] testify in the case-in-chief that she was sexually assaulted twice a month, nor is the defendant charged with sexually assaulting [the victim] twice a month." The defendant's assertion, however, fails to appreciate the context in which A's testimony was admitted. First, A's testimony was admissible under the *Troupe* limitations to the constancy of accusation doctrine because it corroborated the timing of the victim's complaint. Without adding impermissible details of the sexual assault allegations, A's testimony placed the victim's first complaint to her at "about the end of fourth grade," with continuing disclosures occurring approximately "twice a month." These disclosures to A corroborate the victim's testimony because they demonstrate that the victim complained about the attacks well before her disclosure to the police when she was in the sixth grade.

Second, A's testimony was admissible because it rebutted the defendant's assertion that the allegations were recent fabrications. See *State* v. *Troupe*, supra, 237 Conn. 304 n.19. "[D]etails of a sexual assault complaint are otherwise admissible . . . [as] a prior consistent statement admitted to rebut a claim of recent fabrication." Id. Under that reasoning, A's testimony was admissible to rebut the defense's theory that the victim fabricated her disclosure following a dispute with the defendant in late February, 2003. The court explained in overruling the defense's objection to A's testimony that "part of [the defense's] theory of the

the pending charge. The testimony of the witness is admissible only to corroborate the victim's testimony and not for substantive purposes." Conn. Code Evid. § 6-11 (c).

case is that . . . the disclosure made on March third was a fabricated disclosure . . . that was borne [out] of some sort of quarrel over telephone privileges and the like in late February of 2003. . . . If the jury finds it to be a fact, that [the victim] has been complaining about . . . these long series of attacks for a very long period of time prior to February, 2003, [it] is certainly in the court's opinion admissible . . . to rebut the . . . theory of recent fabrication." We agree and therefore conclude that A's testimony was properly admissible.

## II

### REASONABLE DOUBT STANDARD

The defendant last challenges the court's instruction to the jury regarding the reasonable doubt standard. Specifically, he argues that the court unconstitutionally diluted the state's burden of proof by instructing the jury that reasonable doubt is (1) "not a surmise, a guess, or mere conjecture"; (2) "a real doubt, an honest doubt"; and that (3) "if you can reconcile all of the facts proven with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty."

The defendant did not object to those instructions at trial and now seeks *Golding* review. We will review the defendant's claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because there is an adequate record, and "a claim of instructional error regarding the burden of proof is of constitutional magnitude." *State* v. *Howard*, 88 Conn. App. 404, 429, 870 A.2d 8, cert. denied, 275 Conn. 917, 883 A.2d 1250 (2005). We reject all of these claims because our Supreme Court has not found similar instructions unconstitutional.

"In determining whether a trial court's charge satisfies constitutional requirements . . . individual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge.

. . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error." (Internal quotation marks omitted.) *State* v. *Davis*, 283 Conn. 280, 334, 929 A.2d 278 (2007).

The defendant first contends that the court improperly instructed the jury that a reasonable doubt is "something more than a guess or a surmise." Our Supreme Court recently held that this instruction was proper in *State* v. *Davis*, supra, 283 Conn. 280, stating that "this court has rejected the claim that it is improper to define reasonable doubt as 'something more than a guess or a surmise.' . . . We persist in the view that the instruction, when considered in light of the charge as a whole, is not improper." (Citation omitted.) Id., 337. The next instruction cited by the defendant, that reasonable doubt is a "real doubt, an honest doubt," has likewise been held to be proper. See id., 336 ("[t]his court consistently has held that this language is not constitutionally defective"). Our Supreme Court equally has held the last instruction cited by the defendant to be a proper instruction. See *State* v. *Lemoine*, 256 Conn. 193, 205, 770 A.2d 491 (2001) (rejecting constitutional challenge to instruction that jurors could not find defendant guilty if they could "reconcile all of the facts proven with any reasonable theory consistent with the innocence of the accused" [internal quotation marks omitted]). We therefore conclude that the court's jury instructions did not unconstitutionally reduce the state's burden of proving the defendant guilty beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.